564 S.E.2d 418

**Jack NAPIER, Plaintiff Below, Appellee,**

v.

**Patricia NAPIER, Defendant Below, Appellant.**

No. 30015.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 2002.

Decided April 5, 2002.

Ian Henderson, Robert S. Baker, Appalachian Legal Services, Logan, for the Appellant.

Mark Hobbs, Chapmanville, for the Appellee.

DAVIS, Chief Justice.

This is an appeal by Patricia Napier, appellant/defendant below (hereinafter referred to as "Ms. Napier"), from an order of the Circuit Court of Logan County granting summary judgment in favor of Jack Napier, appellee/plaintiff below (hereinafter referred to as "Mr. Napier").[1] The order also dismissed Ms. Napier's counterclaim. As a result of the circuit court's ruling, Ms. Napier was required to remove her mobile home from land owned by Mr. Napier. After a thorough review of the briefs and record in this case, we reverse the circuit court's order granting summary judgment.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Ms. Napier married Brian Napier, the son of the Appellee, Mr. Napier, in 1980. After the marriage, Mr. Napier allowed Ms. Napier and Brian to live in a mobile home on land owned by him. Ms. Napier and Brian paid no rent to Mr. Napier.

In December 2000, Ms. Napier and Brian experienced domestic problems that resulted in Ms. Napier filing domestic assault charges against Brian. A protective order was awarded to Ms. Napier. Brian was required to leave the mobile home.[2] In February of 2001, Mr. Napier served Ms. Napier with a thirty-day notice to remove the mobile home from his land.[3] Ms. Napier did not comply with the notice. Consequently, Mr. Napier filed a complaint seeking to force Ms. Napier to remove the mobile home from his property.[4] Ms. Napier filed an answer to the com-

---

1. Ms. Napier is the daughter-in-law of Mr. Napier.

2. Patricia and Brian are now in the process of getting a divorce.

3. At some point, Brian relinquished all his interest in the mobile home to Ms. Napier.

4. The complaint was initially filed in magistrate court as a petition for summary relief. Ms. Napier had the case removed to circuit court.

plaint. She also filed a counterclaim alleging retaliatory eviction.

■ On April 12, 2001, the circuit court held a status conference. The status conference was converted into a hearing for summary judgment. At the conclusion of the hearing, the circuit court granted summary judgment to Mr. Napier. The circuit court also dismissed Ms. Napier's counterclaim for retaliatory eviction.[5] From these rulings, Ms. Napier now appeals.

## II.

### STANDARD OF REVIEW

■ This case presents issues relating to the granting of summary judgment and the dismissal of an alleged counterclaim. This Court reviews an order granting summary judgment *de novo. See* Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo.*"). We have held that "[i]f there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact." Syl. pt. 4, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963).

■ We have also held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. pt. 2, *State ex rel. McGraw v. Scott*

*Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).[6] This Court has explained that "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. pt. 3, *Chapman v. Kane Transfer Company*, 160 W.Va. 530, 236 S.E.2d 207 (1997).

## III.

### DISCUSSION

#### A. *Application of the Residential Rental Property Act.*

■ The first issue presented by Ms. Napier concerns the application of the West Virginia Residential Rental Property Act, W. Va.Code § 55–3A–1 *et seq.*, (hereinafter "the Act"). Mr. Napier filed this action under W. Va.Code § 55–3A–1(a)(3) (1983) (Repl.Vol. 2000).[7] He alleged that Ms. Napier "negligently damaged" his property. It is argued by Ms. Napier that because no rent was charged to her for living on the land, she was not a "tenant" under the Act. Therefore, she contends, the Act could not be used as a basis for ejecting her. Although the circuit court's order did not expressly address this issue, the parties do not contend that the issue was not raised below.[8] Consequently,

---

**5.** The record fails to disclose that a written or oral motion for summary judgment was made by Mr. Napier. No argument has been raised by Ms. Napier as to the propriety of the circuit court using a status conference to grant summary judgment. Insofar as Ms. Napier has failed to raise what appear to this Court as possible procedural errors, we deem such errors waived. *See Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised on appeal ... are deemed waived.").

**6.** Our review standard for dismissal of a complaint is the same as that for dismissal of a counterclaim.

**7.** W. Va.Code § 55–3A–1(a) (1983) (Repl.Vol. 2000) states:

(a) A person desiring to remove a tenant from residential rental property may apply for such relief to the magistrate court or the cir-

cuit court of the county in which such property is located, by verified petition, setting forth the following:

(1) That he is the owner or agent of the owner and as such has a right to recover possession of the property;

(2) A brief description of the property sufficient to identify it;

(3) That the tenant is wrongfully occupying such property in that the tenant is in arrears in the payment of rent, has breached a warranty or a leasehold covenant, or has deliberately or negligently damaged the property or knowingly permitted another person to do so, and describing such arrearage, breach, or act or omission; and

(4) A prayer for possession of the property.

**8.** Mr. Napier has argued in his brief that the issue is moot, because Ms. Napier has moved from the land in apparent compliance with the circuit court's order. We disagree with the

we address the novel question of whether the Act is applicable to a person residing on another's residential property with consent and without charge.

■■■ "It has been a traditional rule of statutory construction that the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning." *State ex rel. Johnson v. Robinson,* 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979). Moreover, "[i]n the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. pt. 1, *Miners in Gen. Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941), *overruled on other grounds by Lee–Norse Co. v. Rutledge,* 170 W.Va. 162, 291 S.E.2d 477 (1982). "When viewing legislative actions, the substance of the act complained of, instead of its simple form, directs the ensuing analysis." *State ex rel. League of Women Voters of West Virginia v. Tomblin,* 209 W.Va. 565, 584, 550 S.E.2d 355, 374 (2001) (Davis, J. dissenting). Finally, " '[i]n ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' " *Eastern Steel Constructors, Inc. v. City of Salem,* 209 W.Va. 392, 404 n. 11, 549 S.E.2d 266, 278 n. 11 (2001) (quoting *State ex rel. Morgan v. Trent,* 195 W.Va. 257, 263, 465 S.E.2d 257, 263 (1995)).

■ The Act was promulgated in 1983 to provide a speedier mechanism by which landlords could regain possession of their residential rental property.[9] *See generally,* Bruce G. Perrone, *"West Virginia's New Summary Eviction Proceedings: New Questions for an Old Answer,"* 87 W. Va. L.Rev. 359 (1985). For purposes of this case, the controlling language of the Act is contained in W. Va.Code § 55–3A–1(a): "A person desiring to remove a *tenant* from residential rental property may apply for such relief[.]" (Emphasis added.) The Act does not define the term "tenant." According to Ms. Napier, a prerequisite for being designated a "tenant" is the requirement of the payment of rent. We disagree.

■■■ This Court has noted that "[t]he relation of landlord and tenant is created by a contract, either express or implied, by the terms of which one person designated 'tenant' enters into possession of the land under another person known as 'landlord'." *Porter v. Woodard,* 134 W.Va. 612, 617, 60 S.E.2d 199, 202 (1950) (citation omitted). The essential elements of the landlord-tenant relationship have been said to include, "[p]ermission or consent on the part of the landlord, subordination to the landlord's title and rights on the part of the tenant, a reversion in the landlord, an estate in the tenant, and the transfer of possession and control of the premises to the tenant under a contract either express or implied between the parties." *Belle Fourche Pipeline Co. v. State,* 766 P.2d 537, 543 (Wyo.1988). In this regard, we have previously observed, and now hold, that the relation of landlord and tenant may be proved by very slight evidence. Generally, the law will imply a tenancy whenever there is ownership of the land on one hand and occupation by permission on the other. *See Snyder v. Callaghan,* 168 W.Va. 265, 276–77, 284 S.E.2d 241, 249 (1981) ("Generally, the law will imply a tenancy whenever there is ownership of the land on one hand and occupation by permission on the other. The relation of landlord and tenant may be proved by very slight evidence . . . ."). In addition, we hold that the payment of rent may be used as evidence of the existence of a landlord/tenant relationship. "[B]ut neither the actual pay-

mootness argument. This Court recognized in syllabus point 2 of *Murphy v. Smallridge,* 196 W.Va. 35, 468 S.E.2d 167 (1996) that "[a] residential tenant does not have to continue living on the leased premises to preserve a cause of action for retaliatory eviction."

9. Other remedies for seeking repossession of real property include an unlawful entry or detainer proceeding under W.Va.Code § 55–3–1 et seq., and an ejectment action under W.Va.Code § 55–4–1 et seq. It has been noted that "[i]n an action for unlawful entry and detainer, the right to possession is at issue. On the other hand, in ejectment, title or ownership is the chief issue." *Ray v. Hey,* 183 W.Va. 521, 526 n. 2, 396 S.E.2d 702, 707 n. 2 (1990) (Miller, J., dissenting).

ment of rent nor an express contract to pay it is essential to the existence of a tenancy." *Id.*

 Finally, we note that, in general, the type of tenancy created when there is no payment of rent is a tenancy-at-will. We have previously acknowledged that parties may mutually agree to a tenancy-at-will. In syllabus point 1 of *Angel v. Black Band Consol. Coal Co.*, 96 W.Va. 47, 122 S.E. 274 (1924) we defined a tenancy-at-will as "that which a tenant has by an entry made thereon under a demise to hold during the joint wills of the parties." However, it has also been recognized that, in the absence of a contract to the contrary, a tenancy created without the requirement for the payment of rent in any form may be characterized as a tenancy-at-will. *See Burmeister v. Vondrachek*, 86 Wis.2d 650, 273 N.W.2d 242, 247 (1979) ("A tenant at will occupies the property with the permission of the landlord but without a lease or the periodic payment of rent."). Accordingly, we hold that in the absence of a lease agreement to the contrary, a tenancy-at-will is created where one occupies residen-

tial property with the permission of its owner, but without being required to make periodic payments of rent.

 Pursuant to the foregoing authorities, it is clear that the payment of rent is not a prerequisite for a person to be deemed a "tenant." As previously noted, "[i]t is enough that the occupant holds under, and in subordination to, the title of another person, for the purposes of ejectment law. This makes them landlord and tenant." *Lewis v. Yates*, 62 W.Va. 575, 584, 59 S.E. 1073, 1076 (1907). Therefore, we conclude, and hold, that a summary eviction proceeding may be brought under W. Va.Code § 55–3A–1 *et seq.* against a person who has been permitted to possess residential rental property without having to pay rent in any form.

In the instant proceeding, Ms. Napier contends that the circuit court lacked jurisdiction because the Act required payment of rent in order for a person to be deemed a "tenant". In view of our holding on this issue, Ms. Napier's argument is without merit. Therefore, the action was properly before the circuit court.[10]

---

10. During oral argument before this Court, Ms. Napier additionally asserted that Mr. Napier failed to provide adequate notice to vacate. Insofar as this issue was not briefed, on remand, the issue may be raised and properly addressed by the circuit court. We must, however, provide a word of caution with respect to the notice requirement for evicting a tenant who owns a mobile home.

The general notice requirements for terminating a tenancy are set out in W. Va.Code § 37–6–5 as follows:

A tenancy from year to year may be terminated by either party giving notice in writing to the other, at least three months prior to the end of any year, of his intention to terminate the same. A periodic tenancy, in which the period is less than one year, may be terminated by like notice, or by notice for one full period before the end of any period. When such notice is to the tenant, it may be served upon him, or upon anyone holding under him the leased premises, or any part thereof. When it is by the tenant, it may be served upon anyone who at the time owns the premises in whole or in part, or the agent of such owner, or according to the common law. This section shall not apply where, by special agreement, some other period of notice is fixed, or no notice is to be given; nor shall notice be necessary from or to a tenant whose term is to end at a certain time. *See Stewart v. Johnson*, 209 W.Va. 476, 481, 549 S.E.2d 670, 675 (2001) (per curiam) ("Where . . .

there exists a month-to-month tenancy, W. Va. Code § 37–6–5 (1997) requires a landlord provide notice equal to a full period of the tenancy."); Syl. pt. 3, *Deitz v. Nicholas County Court*, 122 W.Va. 296, 8 S.E.2d 884 (1940) ("Under statute requiring notice to terminate tenancy from year to year, where *no period of notice is fixed by special agreement*, the tenancy may be terminated only upon written notice at least three months prior to the expiration of the yearly period.").

We also note that under W. Va.Code § 37–15–6(a) a mobile home park landlord is generally required to give a tenant at least thirty days notice to vacate. But under W. Va.Code § 37–15–6a(a)(2) a mobile home park landlord cannot evict more than twenty-five tenants within a single eighteen-month period, unless the landlord provides not less than six months notice to terminate the rental agreement to each tenant.

We are concerned about the reasonableness of the general notice requirements provided by the above statutes, insofar as notice relates to evicting a tenant and his/her mobile home. The Act, utilized by Mr. Napier in this case, does not expressly address the issue of giving notice by a landlord seeking to evict a tenant. However, under W. Va.Code § 55–3A–3(f) of the Act, when a circuit court orders a tenant to vacate, "[t]he court order shall specify the time when the tenant shall vacate the property, taking into consideration such factors as the nature of the property

## B. Insufficient Evidence for Summary Judgment.

██ Ms. Napier next argues that there was no evidence to support the circuit court's order awarding summary judgment to Mr. Napier. Specifically, Ms. Napier asserts that "[a]t the hearing ... Jack Napier failed to make any specific allegations as to how [she] may have damaged the property; rather he merely asserted that he owned the land and that he was therefore entitled to possession of it."

To fully understand Patricia's argument, we must look to the clear language of the Act. Under W. Va.Code § 55–3A–1(a), a landlord may bring a summary eviction proceeding when "the tenant is wrongfully occupying such property in that the tenant is in arrears in the payment of rent, has breached a warranty or a leasehold covenant, or has deliberately or negligently damaged the property or knowingly permitted another person to do so[.]" Mr. Napier invoked the Act by asserting that Ms. Napier "deliberately or negligently damaged [his] property or knowingly permitted another person to do so."

██ To uphold an award of summary judgment, Mr. Napier had to prove that no genuine issue of material fact existed as to whether Ms. Napier deliberately or negligently damaged his property or knowingly permitted another person to do so. The order granting summary judgment fails to demonstrate that Mr. Napier met his burden. Simply put, the circuit court's order fails to comply with syllabus point 3 of *Fayette County Nat'l. Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997), where we held:

> Although our standard of review for summary judgment remains *de novo*, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

The circuit court's order is devoid of any findings of fact as to whether Ms. Napier deliberately or negligently damaged Mr. Napier's property or knowingly permitted another person to do so. The order merely requires Ms. Napier to vacate the property.

██ It is clear from the record presented to this Court that absolutely no evidence was submitted to the circuit court on the issue of whether Ms. Napier deliberately or negligently damaged Mr. Napier's property, or knowingly permitted another person to do so.[11] Without undisputed evidence on this issue, summary judgment could not have been entered. We therefore reverse the order granting summary judgment.[12]

---

..., the possibility of relative harm to the parties, and other material facts deemed relevant by the court in considering when the tenant might reasonably be expected to vacate the property." Thus, under the Act a circuit court is required to consider hardships when establishing a date that a tenant must vacate the premises. We believe that W. Va.Code § 55–3A–3(f) provides guidance for addressing the issue of eviction notice by a landlord seeking to oust a tenant and his/her mobile home. Although we do not decide the issue today, we believe that situations may arise where the usual thirty day notice may be unreasonable when seeking to oust a tenant and his/her mobile home, and that a court could conclude that up to a ninety day notice would be more appropriate.

11. We must point out that Mr. Napier is bound, in this proceeding, by the reasons given for seeking to evict Ms. Napier. Mr. Napier chose to seek the eviction under the authority of the Act, as opposed to other eviction statutes. He must, therefore, meet the demands of the Act. We do not, however, intend to imply that any reason must be given to terminate a tenancy-at-will. Mr. Napier locked himself into having to provide a reason by proceeding under the Act.

12. Because the circuit court based its decision to dismiss Ms. Napier's counterclaim on the fact that summary judgment was granted to Mr. Napier, we summarily reverse the dismissal of the counterclaim and remand that claim for further proceedings. While we do not express any opinion on whether Ms. Napier has an actionable claim for retaliatory eviction, it will be noted that "[a] residential tenant may state an affirmative cause of action for retaliatory eviction if the landlord's conduct is in retaliation for the tenant's exercise of a right incidental to the tenancy." Syl. pt. 1, *Murphy v. Smallridge*, 196 W.Va. 35, 468 S.E.2d 167 (1996). *See also* W. Va.Code § 37–15–7(a) (which expressly prohibits a landlord from evicting a tenant in retaliation because "the tenant has testified in a court proceeding against the landlord.").

IV.

## CONCLUSION

In view of the foregoing, the circuit court's summary judgment order is reversed. This case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.