# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2017 Term

**FILED**

**May 18, 2017**

**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0597

**DREAMA BOWDEN,**
**AS ADMINISTRATRIX OF THE ESTATE OF**
**LOWELL BOWDEN,**
Plaintiff Below, Petitioner

**V.**

**MONROE COUNTY COMMISSION,**
**A POLITICAL SUBDIVISION; AND**
**PATRICIA GREEN,**
**INDIVIDUALLY AND IN HER OFFICIAL CAPACITY,**
Defendants Below, Respondents

Appeal from the Circuit Court of Monroe County
Honorable Robert A. Irons, Judge
Civil Action No. CC-32-2011-C-18
**REVERSED AND REMANDED**

Submitted: April 19, 2017
Filed: May 18, 2017

Michael A. Olivio
Stephanie H. D. Mullett
Olivio Law Firm, PLLC
Charleston, West Virginia
Attorneys for the Petitioner

J. Victor Flanagan
Daniel J. Burns
Pullin, Fowler, Flanagan,
Brown & Poe, PLLC
Beckley, West Virginia
Attorneys for the Respondents

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "*W. Va. Code*, 29-12A-5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for 'the failure to provide, or the method of providing, police, law enforcement or fire protection[,]' is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole.  Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual."  Syllabus point 8, *Randall v. Fairmont City Police Department*, 186 W. Va. 336, 412 S.E.2d 737 (1991).

2.      "To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown:  (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on

i

the local governmental entity's affirmative undertaking." Syllabus point 2, *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989).

**Davis, Justice:**

The instant matter is before this Court on appeal by Mrs. Dreama Bowden (hereinafter "Mrs. Bowden"), as administratrix of the estate of her late husband, Lowell Bowden (hereinafter "Mr. Bowden"), plaintiff below and petitioner herein. Mrs. Bowden appeals two orders entered by the Circuit Court of Monroe County. The first order granted summary judgement in favor of respondents herein and defendants below, Patricia Green and the Monroe County Commission (hereinafter collectively "the County"), based upon the circuit court's conclusion that the evidence presented by Mrs. Bowden was insufficient to establish a disputed issue of material fact in relation to the special relationship exception to the public duty doctrine. In its second order, the circuit court, *sua sponte*, summarily dismissed all of Mrs. Bowden's remaining claims against all defendants. We find the circuit court's rulings in both orders to be erroneous. Accordingly, we reverse the orders and remand this case for further proceedings.

## I.

## FACTUAL AND PROCEDURAL HISTORY

It is undisputed that, on November 27, 2009, petitioner's decedent, Mr. Bowden, who was seventy years old at the time, was viciously attacked by four or five American Pit Bull Terriers (hereinafter "pit bulls") while he was taking a walk near Landside, Monroe County, West Virginia, an area in which he resided. Mr. Bowden later

1

died from his injuries.  The pit bulls involved in the attack were kept at the home of Kim Blankenship.[1]  Four of the dogs apparently were owned by her son, Justin Blankenship, who resided in her home.[2]  The remaining dog, a black-and-white pit bull named Echo, was in the care of Justin Blankenship and was allegedly owned by Anna Hughes and Mose Christian.[3]  At the time of the attack, Patricia Green (hereinafter "Dog Warden Green"), a defendant below and a respondent herein, served as the Monroe County Dog Warden.

Mrs. Bowden, as administratrix of her husband's estate, filed a complaint against the County and others[4] alleging, in relevant part, negligence in performing statutory duties imposed by W. Va. Code § 19-20-1 *et seq*. thereby allowing the vicious dogs to remain at large, and wrongful death.  Dog Warden Green was sued both individually and in her official capacity as dog warden.  Mrs. Bowden also sough punitive damages alleging willful, wanton, and reckless conduct by Dog Warden Green that was outside her scope of employment.

---

[1]Kim Blankenship was tried and acquitted of criminal charges brought against her in relation to the attack.

[2]Justin Blankenship pled guilty to nine misdemeanors arising out of this incident, including involuntary manslaughter.  *See Bowden v. Monroe Cty. Comm'n*, 232 W. Va. 47, 50 n.1, 750 S.E.2d 263, 266 n.1 (2013).  He apparently was sentenced to a period of incarceration at the Anthony Center for Youthful Offenders.

[3]Ultimately, all of the dogs were euthanized after the attack.

[4]Mrs. Bowden also sued Justin Blankenship, Kim Blankenship, Anna Hughes, Mose Christian, and American Modern Home Insurance Company.

The County filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, asserting a defense based upon the public duty doctrine. Mrs. Bowden responded by asserting the special relationship exception to the public duty doctrine. Mrs. Bowden also sought leave from the circuit court to file an amended complaint to incorporate additional allegations of fact in support of the special relationship exception to the public duty doctrine. However, the circuit court granted the motion to dismiss that had been filed by the County without ruling on Mrs. Bowden's motion to amend her complaint. Mrs. Bowden appealed the dismissal to this Court. *See Bowden v. Monroe Cty. Comm'n*, 232 W. Va. 47, 750 S.E.2d 263 (2013). Finding the circuit court erred in dismissing the matter, this Court remanded for additional discovery and to allow Mrs. Bowden to file her amended complaint. *Id.* On remand, Mrs. Bowden filed her amended complaint, and the parties engaged in discovery.

Thereafter, the County filed a motion seeking summary judgment again based, in relevant part, upon the public duty doctrine. After receiving Mrs. Bowden's response and conducting a hearing, the circuit court granted summary judgment in favor of the County, by order entered on May 5, 2016. In doing so, the circuit court found that Mrs. Bowden had failed to produce facts sufficient to establish the special relationship exception. The parties asked the circuit court for a certification that the summary judgment ruling was final as to the parties and issues addressed therein pursuant to Rule 54(b) of the West Virginia Rules

3

of Civil Procedure. In response, the circuit court instead entered, *sua sponte,* a "Dismissal Order" dated June 2, 2016, which order dismissed the action in its entirety and removed it from the circuit court's docket. This appeal followed.

## II.

## STANDARD OF REVIEW

With respect to our consideration on appeal of a circuit court's summary judgment ruling, it is well established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). It is equally clear that,

> [i]n reviewing a circuit court's order granting summary judgment this Court, like all reviewing courts, engages in the same type of analysis as the circuit court. That is "'we apply the same standard as a circuit court,' reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.*, 196 W. Va. 692, 698, 474 S.E.2d 872, 878 (1996), *quoting Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 58, 459 S.E.2d 329, 335-36 (1995), *citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356-57, 89 L. Ed. 2d 538, 553 (1986).

*Fayette Cty. Nat'l Bank v. Lilly*, 199 W. Va. 349, 353 n.8, 484 S.E.2d 232, 236 n.8 (1997), *overruled on other grounds by Sostaric v. Marshall*, 234 W. Va. 449, 766 S.E.2d 396 (2014). *See also Painter*, 192 W. Va. at 192, 451 S.E.2d at 758 (observing that, in deciding motion

4

for summary judgment, this Court "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion" (citations omitted)).

We also are cognizant that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963). In other words, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). *See also* Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995) ("Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."). Thus,

> [i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

5

Syl. pt. 3, *id.*

With the foregoing standards in mind, we address the dispositive issues herein raised.

## III.

## DISCUSSION

Mrs. Bowden raises seven assignments of error that present two dispositive issues to this Court: (1) whether the circuit court erred in its application of the special relationship exception to the public duty doctrine;[5] and (2) whether the circuit court erred by

_____

[5]Specifically, Mrs. Bowden argues that the circuit court erred by misstating and misapplying the law regarding the relationship of the public duty doctrine and its special relationship exception to the law of immunities for political subdivisions; by finding that a meeting between Mrs. Bowden and Dog Warden Green would not amount to an assumption of a duty to act on behalf of Mrs. Bowden; and by finding that Mrs. Bowden failed to present evidence to support that the County had knowledge that its inaction would lead to harm.

In addition, Mrs. Bowden contends that the circuit court erred by misapplying the standards for granting summary judgment as follows: (1) performing credibility determinations and weighing evidence; (2) failing to consider the totality of the evidence presented in the light most favorable to the non-moving party; (3) holding that the meeting between Mr. and Mrs. Bowden and Dog Warden Green "would not amount to an assumption of a duty to act on behalf of Plaintiff" because such is a question of fact for the jury; (4) finding that Mrs. Bowden failed to present evidence to support that Respondents had knowledge that inaction would lead to harm; (6) erroneously finding that "[t]he only evidence presented by the Plaintiff is her own testimony, and under the standard for summary judgment established in *Gooch v. W. Va. Dep't of Pub. Safety*, this mere scintilla of evidence is not sufficient."; and (7) finding that "Plaintiff has not proven direct contact between the
(continued...)

6

*sua sponte* entering a dismissal order disposing of the entire case when issues remained that were not addressed in the summary judgment order. We address these issues in turn.

### A. *Special Relationship Exception to the Public Duty Doctrine*

The circuit court based its award of summary judgment on its conclusion that Mrs. Bowden failed to satisfactorily prove the elements of the special relationship exception[6] to the public duty doctrine. In other words, the circuit court ruled that Mrs. Bowden had failed to establish any genuine issue of material fact with respect to the existence of a special relationship so as to overcome a motion for summary judgment. Mrs. Bowden claims the circuit court erred. We agree.

Recently, this Court succinctly explained the public duty doctrine in this way:

Under the public duty doctrine, a government entity or officer cannot be held liable for breaching a general, non-discretionary duty owed to the public as a whole. "Often referred to as the 'duty to all, duty to no one' doctrine, the public duty doctrine

---

[5](...continued)
Defendants and the decedent prior to the attack on the decedent."

Finally, Ms. Bowen argues that the circuit court erred in entering a Dismissal Order on June 2, 2016, after finding that there was "nothing remaining to be done" because the Order granting summary judgment did not adjudicate all counts against Respondents."

[6]In its order, the circuit court repeatedly mixed up the terms "public duty doctrine" and "special relationship exception," apparently using one term when it actually intended to refer to the other.

provides that since government owes a duty to the public in general, it does not owe a duty to any individual citizen." [John Cameron McMillan, Jr., "Government Liability and the Public Duty Doctrine," 32 Vill. L. Rev. 505, 509 (1987) (footnotes omitted)]. For example, under the public duty doctrine, "the duty to fight fires or to provide police protection runs to all citizens and is to protect the safety and well-being of the public at large[.]" [*Wolfe v. City of Wheeling*, 182 W. Va. 253, 256, 387 S.E.2d 307, 310 (1989)]. Generally, no private liability attaches when a fire department or police department fails to provide adequate protection to an individual. The public duty doctrine is restricted to "liability for nondiscretionary (or 'ministerial' or 'operational') functions[.]" [*Parkulo v. West Virginia Bd. of Prob. & Parole*, 199 W. Va. 161, 174, 483 S.E.2d 507, 520 (1996) (quoting *Randall v. Fairmont City Police Dep't*, 186 W. Va. 336, 346, 412 S.E.2d 737, 747 (1991))].

*West Virginia State Police v. Hughes*, 238 W. Va. 406, ___, 796 S.E.2d 193, 199 (2017)

(footnotes omitted).[7]

---

[7]This Court also has made clear that

[t]he public duty doctrine is separate and distinct from the principle of immunity. It "does not rest squarely on the principle of governmental immunity, but rests on the principle that recovery may be had for negligence only if a duty has been breached which was owed to the particular person seeking recovery." *Parkulo v. West Virginia Board of Probation and Parole*, 199 W. Va. 161, 172, 483 S.E.2d 507, 518 (1996). In other words, the public duty doctrine "is not based upon immunity from existing liability. Instead, it is based on absence of duty in the first instance." *Holsten v. Massey*, 200 W. Va. 775, 782, 490 S.E.2d 864, 871 (1997). Where the public duty doctrine would apply, there is simply no duty and therefore no need to inquire as to the existence of immunity. The public duty doctrine is not a "doctrine of governmental immunity but one of

(continued...)

An exception to the public duty doctrine, which Mrs. Bowden seeks to apply in this case, "arises when a 'special relationship' exists between the government entity and a specific individual. 'The state may be liable where it has taken on a special duty to a specific person beyond that extended to the general public.'" *Id.* (quoting Barry A. Lindahl, *2 Modern Tort Law: Liability and Litigation* § 16:20 (2d ed. 2008)) (footnote omitted).

Although this Court in *Hughes* was addressing liability of the State, this Court has made clear that the special relationship exception to the public duty doctrine applies to political subdivisions:

> *W. Va. Code*, 29-12A-5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from tort liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection[,]" is coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole. Lacking a clear expression to the contrary, *that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual.*

---

[7](...continued)
tort, based on the initial question applicable to any negligence action, that is, whether the defendant owes the plaintiff any judicially cognizable duty." *Reno v. Chung*, 220 Mich. App. 102, 559 N.W.2d 308, 311 (1996) (Ludington, Judge, dissenting).

*Walker v. Meadows*, 206 W. Va. 78, 83, 521 S.E.2d 801, 806 (1999) (per curiam).

9

Syl. pt. 8, *Randall v. Fairmont City Police Dep't*, 186 W. Va. 336, 412 S.E.2d 737 (1991) (emphasis added).

The elements required to establish the special relationship exception to the public duty doctrine have been previously set forth by this Court as follows:

> To establish that a special relationship exists between a local governmental entity and an individual, which is the basis for a special duty of care owed to such individual, the following elements must be shown: (1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking.

Syl. pt. 2, *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989). *Accord* Syl. pt. 5, *Bowden v. Monroe Cty. Comm'n*, 232 W. Va. 47, 750 S.E.2d 263. The foregoing elements for establishing a special relationship are joined with the conjunctive "and," signifying that all elements are required. *See, e.g., Browning v. Hickman*, 235 W. Va. 640, 652, 776 S.E.2d 142, 154 (2015) ("The three factors . . . are joined with the conjunctive 'and,' meaning they all must be present . . . .").[8] Thus, we examine the evidence relating to each factor to see if

---

[8]*See also Jan-Care Ambulance Serv., Inc. v. Public Serv. Comm'n of W. Virginia*, 206 W. Va. 183, 193 n.13, 522 S.E.2d 912, 922 n.13 (1999) ("Because of the use of the conjunctive 'and,' all of the services contained in Section 1206(b)(4)(C) of the 1973 Act are required of an emergency medical services system."); *Ooten v. Faerber*, 181

(continued...)

it was sufficient to establish a genuine issue of material fact. In examining this evidence, we are mindful that "'[t]he question of whether a special duty arises to protect an individual from a local governmental entity's negligence in the performance of a nondiscretionary . . . function is ordinarily a question of fact for the trier of the facts.' Syl. Pt. 3, in part, *Wolfe v. City of Wheeling*, 182 W. Va. 253, 387 S.E.2d 307 (1989)." Syl. pt. 6, *Bowden*, 232 W. Va. 47, 750 S.E.2d 263.

**1. An assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured.** To support her assertion that the County had assumed a duty to Mr. and Mrs. Bowden, Mrs. Bowden provided deposition testimony that she had called 911 to complain about the pit bulls, was connected to Dog Warden Green to discuss her complaint, and, thereafter, Dog Warden Green visited the Bowden home. According to Mrs. Bowden's testimony, she shared with Mrs. Green her belief that the dogs were dangerous and explained her fear of them. She further testified that, in response, Dog Warden Green assured Mrs. Bowden that the "county would take care of it."[9]

---

[8](...continued)
W. Va. 592, 597, 383 S.E.2d 774, 779 (1989) (observing that "'and' is a conjunctive, and the use of 'and' here clearly makes both conditions necessary, not merely either of the two.").

[9]Specifically, Mrs. Bowden testified as follows:

(continued...)

11

In support of its motion for summary judgment, the County attempted to show the absence of a question of fact by tendering the deposition testimony of Dog Warden Green, wherein she denied receiving a complaint from Mrs. Bowden, visiting the Bowden home, or making any assurances in relation to any pit bulls.

The circuit court concluded that Mrs. Bowden "failed to meet her burden of providing more than a scintilla of evidence that the defendants ever assumed an affirmative duty to act on behalf of [Mr. and Mrs. Bowden], by making a promise or assumption." The circuit court additionally concluded that,

> assuming, arguendo, that [Dog Warden Green] did go to [Mrs. Bowden's] home in response to her 911 complaint, the

---

[9](...continued)

Q. . . . [W]hen you spoke to [Dog Warden Green] about the dogs, what did you understand or believe that she was going to do about the dogs, if anything?

A. That they would no longer be roaming around in my yard.

Q. Did she tell you how she planned on accomplishing that?

A. No.

Q. Did she specifically tell you that she would make sure that they weren't roaming around in the neighborhood?

A. She said – she assured me that the County would take care of it.

12

conversation alleged to have occurred between the two would not amount to an assumption of an affirmative duty to act on [Mrs. Bowden's] behalf in a manner that would have prevented attack on the Plaintiff's decedent.

We find that the circuit court erred by finding no material question of fact was in dispute as to this factor of the special relationship test. The evidence pertaining to the existence of an assumption by the County of an affirmative duty to address Mrs. Bowden's complaint about dangerously vicious dogs amounts to testimony by Mrs. Bowden indicating that such an assumption was made, and testimony by Dog Warden Green indicating the opposite. Rather than exposing the absence of a disputed question of fact, the evidence offered by the County demonstrates a quintessential factual dispute, and the need for credibility determinations, both of which should be resolved by a trier of fact. *See Maston v. Wagner*, 236 W. Va. 488, 498, 781 S.E.2d 936, 946 (2015) ("'In assessing the factual record, we must grant the nonmoving party the benefit of inferences, as credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" (quoting *Williams v. Precision Coil, Inc.*, 194 W. Va. at 59, 459 S.E.2d at 336)). The fact that Mrs. Bowden indicated in her deposition testimony that she understood Dog Warden Green's assurance to mean that "the dogs would no longer be in [the Bowden's] yard," is not dispositive insofar as her testimony

13

further indicated that Dog Warden Green additionally provided assurance that "the county would take care of" making sure the dogs were not roaming around in the neighborhood.[10]

**2. Knowledge on the part of the local governmental entity's agents that inaction could lead to harm.** In support of this second element of the special relationship exception to the public duty doctrine, Mrs. Bowden points to the evidence of Dog Warden Green's own personal experience with one of the pit bulls on November 8, 2009, the same month as the fatal attack on Mr. Bowden. Dog Warden Green testified that, on that day, she received a complaint from Mr. Mark Crook about the pit bull named Echo jumping aggressively on his car. Dog Warden Green related that, while she and her husband were in their vehicle at the Crook residence,[11] the pit bull named Echo appeared and jumped up on the side of her vehicle while growling and barking. She stated that the dog scared her and her husband, and she would not exit the vehicle. That same evening, she went to Justin Blankenship's home, issued him a citation for harboring a vicious dog, and instructed him to keep the dog chained and fenced.[12] Mrs. Bowden submits that a reasonable jury could find that a first-hand attack of this nature, coupled with Dog Warden Green's years of experience

[10]*See* note 9, *supra*.

[11]Dog Warden Green's husband had driven her to the Crook residence.

[12]However, the dog, which had not yet returned to the residence, was not seized, and Dog Warden Green could not remember returning to the Blankenship residence to ensure that the dog had actually been chained and fenced as instructed.

14

as an animal control officer and the numerous complaints that had been made about the pit bulls, was sufficient to establish knowledge that inaction could lead to harm.

The County does not dispute this event, but, rather, disputes the inferences to be drawn therefrom. According to the County's reasoning, Dog Warden Green's experience with a single aggressive pit bull, along with reports of one or more pit bulls acting aggressively in the neighborhood, is insufficient to establish knowledge that inaction could result in a multi-dog attack such as that suffered by Mr. Bowden, especially when no one had been physically injured by any pit bull.

The circuit court similarly found that Ms. Bowden did "not meet her burden of providing substantial evidence that would allow a jury to find in her favor that Defendants knew inaction would lead to harm." To support its conclusion, the circuit court reasoned that the evidence established that Dog Warden Green had knowledge of only one pit bull in the neighborhood. With respect to the complaint by Mr. Crook, the circuit court commented that "the dog, Echo, did not attack or harm Mr. Crook." In addition, the circuit court incorrectly found that, when Dog Warden Green went to Justin Blankenship's home and issued a citation for harboring a vicious dog, she "confirmed that no other pit bulls were in his house or on his property." The portion of the record cited by the circuit court to support this finding contains Dog Warden Green's testimony that she had "*never seen*" any other pit bulls on the

15

Blankenship property. However, it is important to note that Dog Warden Green testified that when she went to the Blankenship home and issued the citation, she did not get out of her vehicle. Moreover, the citation indicates that it was issued at 9:30 p.m., when it would have been dark and difficult to observe the grounds while seated in a vehicle. Thus, the circuit court's conclusion that Dog Warden Green had *confirmed* the absence of multiple pit bulls located at the Blankenship residence is factually incorrect based upon the evidence in the record.

We find that the circuit court erred in concluding that Mrs. Bowden failed to establish that facts related to the knowledge factor of the special relationship test were in dispute. Contrary to the circuit court's findings and the County's arguments, the record on appeal contains numerous statements from neighbors living in the same rural community as the Bowdens detailing encounters with one or more of the pit bulls where the dogs were running loose and acting aggressively. For example, Philip Hunt, who characterized the *dogs* as running loose constantly, testified at the criminal trial of Kimberly Blankenship and described four incidents involving the pit bulls. One incident in 2009 occurred on Easter Sunday, when the *dogs* "came up after [his] kids" who were playing in the yard. Mr. Hunt and his brothers-in-law had to chase the *dogs* away. During another incident in 2009,[13] Mr.

---

[13]In a written statement, Mr. Hunt described this incident as occurring in July 2009.

Hunt's son was chased by one of the dogs when he went to get trash cans at the bottom of the driveway. The boy shot at the dog with his BB gun and was able to run into the house. On a third occasion the *dogs* chased Mr. Hunt's truck and prevented him and his wife from exiting the vehicle without first pulling into the garage. Finally, once when he was unable to pull into his garage, one of the pit bulls was in his driveway growling and barking at Mr. Hunt's vehicle so that he could not exit until the dog left. Mr. Hunt testified that he "called animal control" and "nothing was done."[14]

The various complaints, combined with Dog Warden Green's own experience with one of the dogs where she was too afraid to exit her vehicle, were sufficient to establish a question of fact with respect to the County's knowledge that its inaction could lead to harm. The rationale adopted by the circuit court and the County, that the absence of any actual physical harm prior to the attack on Mr. Bowden was sufficient to dispel such knowledge, improperly draws inferences in favor of the County and not Mrs. Bowden. *See Painter*, 192 W. Va. at 192, 451 S.E.2d at 758 (observing that, in deciding motion for summary judgment, a court "must draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion" (citations omitted)). Indeed, a reasonable interpretation of the facts, properly viewed in the light most favorable to Mrs. Bowden, is

---

[14]The record contains additional statements by other neighbors describing similar experiences with one or more of the dogs, some of which indicate that complaints were made to "animal control" or to "the state" and nothing was done about the dogs.

17

that the lack of injury was fortuitous in that the victims of the aggressive dogs were either able to get away, or were safely inside their vehicles and refused to exit the same in the presence of the vicious dog or dogs.

**3. Some form of direct contact between the local governmental entity's agents and the injured party.**  This Court has explained that "the requirement of direct contact serves as a basis for rationally limiting the class of individuals to whom the local governmental entity's 'special' duty extends." *Wolfe*, 182 W. Va. at 257-58, 387 S.E.2d at 311-12 (citing *Cuffy v. City of New York*, 69 N.Y.2d 255, 261, 505 N.E.2d 937, 940, 513 N.Y.S.2d 372, 375 (1987)).

On the issue of direct contact, Mrs. Bowden again relies on her deposition testimony that, within a month prior to the attack on Mr. Bowden, she spoke to Dog Warden Green on the phone when making her complaint about the pit bulls and that, following the conversation, Dog Warden Green visited the Bowden home in response to the complaint. Mrs. Bowden argues that her assertion that Dog Warden Green had visited her home is supported by her testimony describing Dog Warden Green's uniform and the fact that she was accompanied by a man (the record demonstrates that Dog Warden Green's husband typically drove the truck for her when she went on calls).  In addition, Mrs. Bowden points to other evidence in the record that, she asserts, also could be interpreted as corroborating her

testimony regarding the visit. Such evidence includes testimony by her daughter-in-law, Linda Ludwig,[15] that a Monroe County Animal Control vehicle stopped at the Ludwig home sometime before the fatal attack seeking directions to the *Blankenship* home. Mrs. Bowden contends that, because there was evidence that Dog Warden Green was familiar with the Blankenship home, having previously been there in response to prior complaints,[16] she should not have needed directions to the home. Thus, Mrs. Bowden reasons that a jury could conclude that Dog Warden Green was actually trying to find Mrs. Bowden's home. Mrs. Bowden also notes that an "Animal Control Expense Sheet" completed by Dog Warden Green in relation to the citation she issued to Justin Blankenship on November 8, 2009, provides additional evidence that could be interpreted by a jury as supporting her assertion that Dog Warden Green visited the Bowden home. The expense sheet contains a notation stating "called on (11-4-09) Justin Blankenship about the Blk & White pit Bull and ask him to pen and chain dog. Said he would do so, but the dog has been loose. So I issued a ticket to him [under W. Va. Code §] 19-20-20 for visious [sic] dog. . . ." Mrs. Bowden contends

_____

[15]Mrs. Bowden contends that her daughter-in-law, Linda Ludwig, also is Justin Blankenship's aunt. Thus, she asserts, the familial relationship casts a shadow of bias on Mrs. Ludwig's testimony that should be weighed by a jury. The County responds that Mrs. Bowden did not make this argument below, and the record on appeal contains no evidence of the relationship between Mrs. Ludwig and Justin Blankenship. Because we find no evidence of a family relationship between Mrs. Ludwig and Justin Blankenship in the record on appeal, we will not consider Mrs. Bowden's contentions in this regard.

[16]In her deposition, Dog Warden Green testified that, prior to the attack on Mr. Bowden, she had been to the Blankenship residence "a couple of times for dog complaints, and further, Blankenship's horses."

that a jury could find that it was her contact with Dog Warden Green that prompted her to call on Justin Blankenship on November 4, 2009.

The County responds by arguing that the evidence relied upon by Mrs. Bowden amounts to self-serving statements and conjecture, which are insufficient to overcome a motion for summary judgment. The County asserts that the "Animal Control Expense Sheet" simply evidences that Dog Warden Green called Mr. Blankenship on November 4, 2009, and provides nothing whatsoever to indicate any reason for the call. The County then submits that the following evidence demonstrates the absence of a disputed material fact: (1) the testimony of Dog Warden Green wherein she denied having ever visited the Bowden home or speaking to Mrs. Bowden by phone; (2) the absence of any office records documenting a visit to the Bowden home; and (3) testimony by Robert and Linda Ludwig that they had never seen animal control at the Bowden home.

In granting summary judgment, the circuit court found that Mrs. Bowden's testimony was insufficient to satisfy her burden of overcoming the County's motion for summary judgment insofar as it was disputed by at least three other people (Dog Warden Green, Robert Ludwig, and Linda Ludwig). The circuit court's ruling is erroneous.

The County is correct that self-serving statements and conjecture are insufficient to overcome a motion for summary judgment.

> [T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere "scintilla of evidence" and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. . . . The evidence illustrating the factual controversy cannot be conjectural or problematic. It must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve. The evidence must contradict the showing of the moving party by pointing to specific facts demonstrating that, indeed, there is a "trialworthy" issue.

*Williams*, 194 W. Va. at 60, 459 S.E.2d at 337 (internal citation and footnote omitted).

However, the County and the circuit court fail to recognize that, before any burden is imposed upon Mrs. Bowden to overcome summary judgment, the County had to make a properly supported motion demonstrating that there was no material question of fact in dispute. In other words, "the initial burden of production and persuasion is upon the party moving for a summary judgment." *Id.* With respect to the moving party's burden, this Court has held that, "[i]f the moving party makes a properly supported motion for summary judgment *and can show by affirmative evidence that there is no genuine issue of material fact*, the burden of production shifts to the nonmoving party . . . ." Syl. pt. 3, in part, *Jividen v. Law*, 194 W. Va. 705, 461 S.E.2d 451 (1995) (emphasis added). The evidence relied upon by the County simply fails to "show by affirmative evidence that there is no genuine issue of material fact." *Id.* Rather, the testimony of Mrs. Bowden and Dog Warden Green was directly contradictory as to whether a meeting between them had occurred. The additional

21

evidence relied upon by the parties does not favor one party over the other on its own, but instead requires drawing inferences and making credibility determinations, which functions are not available to a circuit court ruling on a motion for summary judgment. *See* Syl. pt. 3, *Painter*, 192 W. Va. 189, 451 S.E.2d 755 ("The circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial."). *Accord Williams*, 194 W. Va. at 59, 459 S.E.2d at 336.

**4. Mrs. Bowden's justifiable reliance on the local governmental entity's affirmative undertaking.** This Court has recognized that

> [t]he injured party's reliance is as critical in establishing the existence of a "special relationship" as is the local governmental entity's voluntary affirmative undertaking of a duty to act toward the injured party. The element of reliance provides the essential causative link between the special duty assumed by the local governmental entity and the injury. *Cuffy* [*v. City of New York*], 69 N.Y.2d at 261, 505 N.E.2d at 940, 513 N.Y.S.2d at 375.

*Wolfe*, 182 W. Va. at 257, 387 S.E.2d at 311. We find the controverted evidence related to whether Dog Warden Green visited the Bowden home and gave assurances that "the county would take care of" making sure the dogs were not roaming around in the neighborhood[17]

---

[17]*See supra* note 9.

22

is sufficient to establish a question for the jury as to whether Mr. and Mrs. Bowden's reliance on those assurances was justifiable.

Because we find disputed evidence on each of the factors required to establish the special relationship exception to the public duty doctrine, we find the circuit court erred by granting summary judgment to the County. Indeed, this Court has emphasized that

> the question of whether a special duty arises to protect an individual from a local governmental entity's negligence in the performance of a nondiscretionary governmental function is ordinarily a question of fact for the trier of the facts. *Estate of Tanasijevich v. City of Hammond*, 178 Ind. App. 669, 675, 383 N.E.2d 1081, 1085 (1978); *De Long v. County of Erie*, 60 N.Y.2d 296, 306, 457 N.E.2d 717, 722, 469 N.Y.S.2d 611, 616 (1983).

*Wolfe*, 182 W. Va. at 258, 387 S.E.2d at 312.

### B. Dismissal Order

Mrs. Bowden submits that counsel for all parties to this appeal requested a certification from the circuit court pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure stating that the summary judgment order was final as to the parties and issues addressed therein. Rather than issue a Rule 54(b) certification, the circuit court, *sua sponte*, issued a two sentence dismissal order stating in full:

> On this day the Court reviewed the file, and it appearing proper to [do] so, and nothing remaining to be done, it is hereby **ORDERED and ADJUDGED** as follows:

23

1.      The above styled action is hereby **DISMISSED.** The Clerk is directed to remove it from the docket and to provide a copy of this order to any pro se party, and counsel, not registered for electronic notification[.]

Mrs. Bowden contends that, insofar as the circuit court's summary judgment order did not address certain claims contained in her complaint,[18] it was error for the circuit court to dismiss those claims.

The County agrees that the summary judgment order did not address some of Mrs. Bowden's claims that were subsequently dismissed by the circuit court and, in addition, notes that the dismissal of some defendants is not relevant to the County. Nevertheless, the County contends that some of the dismissed issues were rendered moot by the summary judgment order and, therefore, dismissal of those issues was proper.

Because we have reversed the circuit court's summary judgment order, upon which the dismissal order apparently was based, we likewise summarily vacate the circuit court's dismissal order. *See, e.g., Napier v. Napier*, 211 W. Va. 208, 214 n.12, 564 S.E.2d

---

[18]Namely, Count VII of her complaint, pertaining to W. Va. Code § 29B-1-1 *et seq.* and the United States Freedom of Information Act, 5 USC § 552(a)(3); Counts VI and IX, concerning punitive damages and actions by Dog Warden Green that may have been outside the scope of her employment; and claims against additional defendants Anna Hughes and Mose Christian, who are not parties to the instant appeal.

418, 424 n.12 (2002) ("Because the circuit court based its decision to dismiss Ms. Napier's counterclaim on the fact that summary judgment was granted to Mr. Napier, we summarily reverse the dismissal of the counterclaim and remand that claim for further proceedings.").

## IV.

## CONCLUSION

Based upon the reasoning set out above, we reverse the May 5, 2016, and June 2, 2016, orders entered by the Circuit Court of Monroe County and remanding this case for further proceedings.

Reversed and Remanded.