IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0485

_____

**FILED**

**June 12, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WW CONSULTANTS, INC.,
Plaintiff/Counterclaim Defendant/Third-Party Plaintiff Below, Petitioner,

V.

POCAHONTAS COUNTY PUBLIC SERVICE DISTRICT,
Defendant/Counterclaim Plaintiff Below, Respondent,

and

A-3 USA, INC., ORDERS CONSTRUCTION COMPANY, INC.,
AND PIPE PLUS, INC.,
Counterclaim Defendants/Third-Party Defendants Below,
Respondents.

_____

Appeal from the Circuit Court of Kanawha County
Business Court Division
The Honorable Christopher C. Wilkes, Judge
Civil Action No. 18-C-115

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

_____

Submitted: January 11, 2023
Filed: June 12, 2023

Lee Murray Hall, Esq.
Sarah A. Walling, Esq.
Jenkins Fenstermaker, PLLC
Huntington, West Virginia
Attorneys for the Petitioner

John D. Hoblitzell, III, Esq.
Camille E. Wartts, Esq.
Kay Casto & Chaney, PLLC
Charleston, West Virginia
Attorneys for Respondent

Norman T. Daniels, Jr., Esq.
Thomas E. G. Spears, Esq.
Daniels Law Firm, PLLC
Charleston, West Virginia
Attorneys for Respondent
Pipe Plus, Inc.

Christopher D. Negley, Esq.
Michael D. Dunham, Esq.
Shuman McCuskey Slicer PLLC
Charleston, West Virginia
Attorneys for Respondent
Pocahontas County Public
Service District

Orders Construction Company, Inc.

John W. Burns, Esq.
Gordon Rees Scully Mansukhani, LLP
Pittsburgh, Pennsylvania
Attorney for Respondent
A-3 USA, Inc.

JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE ARMSTEAD concurs in part, dissents in part, and may write separately.

**SYLLABUS BY THE COURT**

1.      "'The key to determining if an order is final is not whether the language from Rule 54(b) of the West Virginia Rules of Civil Procedure is included in the order, but is whether the order approximates a final order in its nature and effect. We extend application of this rule to a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.' Syl. Pt. 1, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995)." Syllabus point 7, *Erie Insurance Co. v. Dolly*, 240 W. Va. 345, 811 S.E.2d 875 (2018).

2.      "Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that 'no just reason for delay' exists and 'directi[ng] . . . entry of judgment' will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect." Syllabus point 2, *Durm v. Heck's, Inc.*, 184 W. Va. 562, 401 S.E.2d 908 (1991).

3.      Even though a claim for indemnity does not technically arise until the primary obligation to pay has been established, such claims may be brought by way of

i

third-party practice before they are technically ripe to serve the interests of fairness and judicial economy.

4.      "The requisite elements of an implied indemnity claim in West Virginia are a showing that: (1) an injury was sustained by a third party; (2) for which a putative indemnitee has become subject to liability because of a positive duty created by statute or common law, but whose independent actions did not contribute to the injury; and (3) for which a putative indemnitor should bear fault for causing because of the relationship the indemnitor and indemnitee share." Syllabus point 4, *Harvest Capital v. West Virginia Department of Energy*, 211 W. Va. 34, 560 S.E.2d 509 (2002).

5.      "The general principle of implied indemnity arises from equitable considerations. At the heart of the doctrine is the premise that the person seeking to assert implied indemnity—the indemnitee—has been required to pay damages caused by a third party—the indemnitor. In the typical case, the indemnitee is made liable to the injured party because of some positive duty created by statute or the common law, but the actual cause of the injury was the act of the indemnitor." Syllabus point 2, *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W. Va. 22, 268 S.E.2d 296 (1980).

6.      The statutory scheme and exceptions set forth in West Virginia Code §§ 55-7-13a to -13d govern contribution claims. The unambiguous language of those statutes abolished any contribution claim that falls outside of them.

BUNN, Justice:

In this appeal from pending litigation involving the construction of a wastewater treatment facility in Pocahontas County, WW Consultants, Inc. ("WWC"), the design engineer for the project, challenges various rulings by the business court that either dismissed or granted summary judgment to three third-party defendant contractors who worked on or supplied materials for the project. WWC contends that the business court erred by disposing of its claims for contractual indemnity, implied indemnity, and contribution in favor of the third-party defendants. Because we have determined that the business court erred by disposing of WWC's contractual indemnity claims, we reverse, in part, on that issue and remand for additional proceedings consistent with this opinion. However, we further conclude that WWC failed to plead or present facts alleging the requisite special relationships to support its implied indemnity claims, and that WWC failed to plead contribution claims that are recognized under the modified comparative fault statutory scheme codified at West Virginia Code §§ 55-7-13a to -13d. Accordingly, we affirm, in part, as to those issues.[1]

---

[1] We do not address the merits of two additional issues raised by WWC. First, WWC appeals an order finding its "Notice of Intent to Attribute Fault" was untimely. As explained below, this order is interlocutory and is not subject to appellate review at this time. Second, the business court determined that certain claims asserted in WWC's third-party complaint are time barred. For reasons also set forth below, we decline to address this issue as it would not dispose of WWC's claims.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY[2]

Respondent Pocahontas County Public Service District ("Pocahontas PSD"), defendant and counterclaim plaintiff below, provides water service and wastewater processing to certain customers throughout Pocahontas County, West Virginia. Petitioner WWC, plaintiff, counterclaim defendant, and third-party plaintiff below,[3] is a professional engineering firm that contracted, through its predecessor entity,[4] with Pocahontas PSD in 2011.

### A. The Project

WWC was to serve as the lead engineer and provide certain design and consulting services to Pocahontas PSD related to the construction of a new wastewater plant to serve the Snowshoe Resort and Linwood Valley areas of Pocahontas County. Complete copies of the contracts between Pocahontas PSD and WWC are not in the

---

[2] The underlying case remains pending below, so in reciting facts to provide context we make no determination as to any factual dispute that may remain pending. We glean the following facts from the parties' briefs and the record before us.

[3] According to its complaint, WWC is a Virginia professional engineering corporation licensed to do business in West Virginia. It provides engineering, consulting, and design services in the planning, design, construction, operation, and financing of municipal and other water and wastewater piping, pumping, and treatment systems.

[4] WWC's complaint states that it became the successor-in-interest to Waste Water Management, Inc., following a corporate name change.

appellate record, only the "Standard General Conditions" portion was provided. WWC represents that the project was divided into two phases but fails to describe them.

According to WWC, the project experienced delays from the outset, including proceedings before the West Virginia Public Service Commission ("PSC"), which resulted in a PSC order directing that Pocahontas PSD resolve to build a centralized treatment plant rather than a decentralized system utilizing multiple sewage plants as proposed in WWC's design. WWC represents that some delays required additional work not contemplated in the design agreement. For example, following a PSC mandated consultation with the West Virginia Department of Environmental Protection, WWC had to prepare unanticipated engineering design alternatives. WWC completed Phase I of the project in 2012.

In April 2013, the PSC granted Pocahontas PSD approval for a Phase II engineering contract. WWC completed its engineering work in 2013; however, the construction process for Phase II did not begin until 2015 because Pocahontas PSD had to obtain necessary easements.

WWC oversaw the bidding process and explains that the project was bid as three separate construction contracts; one for the collection system, one for the pump stations, and one for the wastewater treatment plant. Respondent Pipe Plus, Inc.,

3

counterclaim defendant and third-party defendant below, successfully bid both the collection system and pump stations and executed two contracts with Pocahontas PSD accordingly. Respondent Orders Construction Company, Inc., also a counterclaim defendant and third-party defendant below, successfully bid the wastewater treatment plant, which included the headworks portion of the facility,[5] and entered a contract with Pocahontas PSD for its construction. Respondent A-3 USA, Inc., an additional counterclaim defendant and third-party defendant below, supplied certain component parts used in the wastewater treatment plant.[6]

The project's target completion date was October 1, 2016; however, WWC claims the project was not completed until at least May 31, 2017. WWC accepts no responsibility for the numerous delays incurred throughout the design and construction of the project. WWC contends that it was required to provide additional engineering services not contracted for, and was engaged in the project for a longer period than anticipated, through no fault of its own.

---

[5] According to WWC, the headworks is the initial stage of the treatment process where the wastewater is collected and received.

[6] A-3 USA secured a bid through Orders Construction to supply membrane bioreactor system component parts.

4

### B. The Litigation

Seeking compensation for the alleged additional work for which it had not been paid, WWC filed a complaint in the Circuit Court of Kanawha County against Pocahontas PSD and certain others on February 6, 2018, asserting, in relevant part, various breach of contract claims.[7] On March 28, 2018, Pocahontas PSD served its answer and a two-count counterclaim on WWC. Count I of Pocahontas PSD's counterclaim asserted professional negligence based on twenty-eight alleged deficiencies in the wastewater treatment plant and facilities designed by WWC. As discussed in more detail below, some of Pocahontas PSD's allegations identified discrete deficiencies in the headworks portion of the wastewater treatment plant. Count II asserted breach of contract.

In July 2018, the case was transferred to the Business Court Division of the West Virginia Judiciary, and the parties engaged in discovery. In August 2019, WWC filed a motion for partial summary judgment as to Pocahontas PSD's professional negligence counterclaim. By order entered on November 27, 2019, the business court granted WWC's motion and dismissed twenty of Pocahontas PSD's twenty-eight allegations of professional negligence because they were not adequately supported by expert testimony.

---

[7] The complaint also named as defendants three board members of the Pocahontas PSD, the West Virginia Department of Environmental Protection, and the West Virginia Water Development Authority. These persons and entities are neither part of nor relevant to this appeal.

Meanwhile, discovery closed on September 15, 2019. WWC asserts that it tried to obtain information about the nature of Pocahontas PSD's counterclaims and associated damages during discovery, yet Pocahontas PSD gave no indication that it anticipated extensive repairs of the headworks area. After the close of discovery, Pocahontas PSD filed its third supplemental response to WWC's requests for production. This supplemental response included a headworks repair plan and three options for headworks improvements that ranged in cost from $274,000 to $1,573,500. WWC characterizes this discovery response as a "new headworks improvement claim," and filed a motion to strike the response on November 4, 2019. By order entered on March 16, 2020, the business court granted, in part, WWC's motion to strike. The court declined to strike certain documents contained in Pocahontas PSD's third supplemental response to WWC's requests for production, but it reopened discovery to allow for development of the newly produced evidence and stated that it would implement a new scheduling order to allow for possible amendment of pleadings, joinder of parties, and supplementation of expert witness reports.

After WWC filed its motion to strike, it sent a tender letter to Orders Construction. The tender letter, dated November 5, 2019, advised Orders Construction that claims asserted in Pocahontas PSD's counterclaim implicated Orders Construction's work and that WWC sought to be defended and indemnified under Orders Construction's contract with Pocahontas PSD.

6

WWC then filed a motion to join new parties and a proposed third-party complaint against Orders Construction, Pipe Plus, and A-3 USA. Pocahontas PSD also moved for leave to file an amended counterclaim to add claims against Pipe Plus and A-3 USA. The business court granted both motions. Pocahontas PSD filed its first amended counterclaim on May 12, 2020,[8] and WWC filed its third-party complaint on May 18, 2020.[9] In its third-party complaint, WWC alleged, in relevant part, that Orders and Pipe Plus were obligated by contract to provide it with a defense and indemnity pursuant to their contracts with Pocahontas PSD and asserted claims of implied indemnity and contribution against Orders, Pipe Plus, and A-3 USA.

In July 2020, Orders Construction and A-3 USA each filed a Rule 12(b)(6)[10] motion to dismiss WWC's third-party complaint, raising several grounds for dismissal. Prior to the business court ruling on these motions, WWC filed, on November 4, 2020, a "Notice of Intent to Attribute Fault," under West Virginia Code § 55-7-13d (eff. 2016), as

---

[8] On July 2, 2020, Pocahontas PSD served a "Notice of Voluntary Dismissal" of its counterclaim against A-3 USA. The notice provided no explanation for the dismissal.

[9] According to A-3 USA, WWC's original claims against Pocahontas PSD were resolved in mediation, and the case below now involves only the surviving counterclaims asserted against WWC by Pocahontas PSD.

[10] *See* Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, allowing a motion to dismiss for "failure to state a claim upon which relief can be granted."

to Orders Construction and A-3 USA.[11] Orders Construction and A-3 USA filed a joint motion to strike the notice as untimely, and the business court granted that motion.

By order entered on January 14, 2021, the business court granted Orders Construction's Rule 12(b)(6) motion and dismissed it from the action with prejudice. The business court denied WWC's subsequent Rule 59(e)[12] motion to alter this judgment by order entered on April 12, 2021. Similarly, by order entered on March 30, 2021, the business court granted A-3 USA's Rule 12(b)(6) motion and dismissed it, with prejudice, from the action. In an order dated May 18, 2021, the business court denied WWC's Rule 59(e) motion to alter the order dismissing A-3 USA. The business court certified this order as final pursuant to Rule 54(b).[13]

In February 2021, Pipe Plus filed a motion for partial summary judgment, which the business court granted by order entered on April 16, 2021, completely resolving

---

[11] Because West Virginia Code § 55-7-13d provides for a notice of *nonparty* fault, WWC characterizes its notice as contingent upon the business court granting the pending motions to dismiss. Thus, we will refer to it as a "contingent notice of nonparty fault."

[12] *See* Rule 59(e) of the West Virginia Rules of Civil Procedure, providing for a motion to alter or amend a judgment.

[13] *See* Rule 54(b) of the West Virginia Rules of Civil Procedure, permitting a court to direct entry of a final judgment "as to one or more but fewer than all" claims or parties when certain conditions are met.

WWC's claims against Pipe Plus and dismissing it, with prejudice, as a third-party defendant.[14]

In this appeal, WWC seeks review of the business court's orders granting dismissal of its third-party complaint against Orders Construction and A-3 USA, along with the orders denying WWC's motions to alter or amend those dismissals. WWC also seeks review of the business court's order granting summary judgment to Pipe Plus and dismissing Pipe Plus as a third-party defendant. Finally, WWC seeks review of the business court's order granting the joint motion by Orders Construction and A-3 USA to strike WWC's contingent notice of nonparty fault.

## II.

### STANDARD OF REVIEW

Our review of the orders dismissing Orders Construction and A-3 USA, as well as the summary judgment order dismissing Pipe Plus, is de novo. *See* Syl. pt. 2, *State ex. rel McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516

---

[14] In its motion seeking partial summary judgment, Pipe Plus sought dismissal as to WWC's third-party claims against it. Accordingly, the business court's order granting "partial" summary judgment resolved the claims between Pipe Plus and WWC and dismissed Pipe Plus, with prejudice, from the action. We presume that the circuit court designated its order as granting "partial" summary judgment because, at that time, Pocahontas PSD's claims against Pipe Plus remained pending. However, following settlement of those claims, the business court entered an "Agreed Partial Dismissal Order" on July 15, 2021, which dismissed all claims between Pocahontas PSD and Pipe Plus.

(1995) ("Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."); Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."). Applying these standards, we give plenary review to the issues properly before us.

## III.

## DISCUSSION

After a brief discussion of the appealability of the orders WWC seeks review of, we will address, in turn, four issues raised by WWC: express indemnity, implied indemnity, contribution, and timeliness.

### *A. Appealability*

Although this case remains pending below, WWC seeks review of orders issued by the business court that resolved WWC's claims against Orders Construction, A-3 USA, and Pipe Plus, and an order that struck its notice of nonparty fault. Only one of these orders, the May 18, 2021 order denying WWC's motion to alter or amend the dismissal order as to A-3 USA, is designated as final pursuant to Rule 54(b). This order, which resolves WWC's claims against A-3 USA, is appealable pursuant to well-established caselaw. *See* Syl. pt. 1, *Riffe v. Armstrong*, 197 W. Va. 626, 477 S.E.2d 535 (1996) ("In an order dismissing fewer than all of the parties or fewer than all the claims in a civil action, the inclusion of the language required by Rule 54(b) of the West Virginia Rules of Civil

10

Procedure makes that order appealable immediately with respect to the dismissed parties and claims."), *modified on other grounds by Moats v. Preston Cnty. Comm'n*, 206 W. Va. 8, 521 S.E.2d 180 (1999).

However, the absence of Rule 54(b) language from the orders granting dismissal to Orders Construction and summary judgment to Pipe Plus is not dispositive as to those orders' finality. We have held that

> "[t]he key to determining if an order is final is not whether the language from Rule 54(b) of the West Virginia Rules of Civil Procedure is included in the order, but is whether the order approximates a final order in its nature and effect. We extend application of this rule to a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure." Syl. Pt. 1, S*tate ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc*., 194 W. Va. 770, 461 S.E.2d 516 (1995).

Syl. pt. 7, *Erie Ins. Co. v. Dolly*, 240 W. Va. 345, 811 S.E.2d 875 (2018). Likewise,

> [w]here an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that "no just reason for delay" exists and "directi[ng] . . . entry of judgment" will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect.

Syl. pt. 2, *Durm v. Heck's, Inc*., 184 W. Va. 562, 401 S.E.2d 908 (1991). Both the order dismissing A3-USA and the order granting summary judgment to Pipe Plus as to WWC's claims disposed of all WWC's claims against those third-party defendants and dismissed

11

both parties with prejudice. Accordingly, these orders approximate a final order in their nature and effect and are appealable.

WWC also seeks review of the business court's order granting a motion to strike its contingent notice of nonparty fault as untimely. WWC argues that this interlocutory order is reviewable under the following standard:

> "'Where an appeal is properly obtained from an appealable decree either final or interlocutory, such appeal will bring with it for review all preceding non-appealable decrees or orders, *from which have arisen any of the errors complained of in the decree appealed from*, no matter how long they may have been rendered before the appeal was taken.' Point 2, syllabus, *Lloyd v. Kyle*, 26 W. Va. 534 [1885]." Syllabus point 5, *State ex rel. Davis v. Iman Mining Co.*, 144 W. Va. 46, 106 S.E.2d 97 (1958).

Syl. pt. 6, *Riffe*, 197 W. Va. 626, 477 S.E.2d 535 (emphasis added). We disagree. In the context of an appeal under Rule 54(b) of an order that does not fully resolve the litigation below, the foregoing authority permits consideration of preceding non-appealable orders only when the errors in the Rule 54(b) order arise from the earlier non-appealable orders. *See, e.g.*, *Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, 239 W. Va. 428, 445, 801 S.E.2d 443, 460 (2017) (considering in limine rulings along with an appeal from a Rule 54(b) order granting summary judgment where "the in limine rulings and the summary judgment rulings are inextricably entwined"). In this case, WWC's contingent notice of nonparty fault was stricken by the business court as untimely. The business court's ruling on the timeliness of that notice—a procedural issue governed

12

by West Virginia Code § 55-7-13d—cannot reasonably be said to have *given rise to* the business court's rulings on the substantive issues regarding the merits of the underlying indemnity and contribution claims addressed in the orders that are properly before us on appeal. Therefore, the order striking WWC's contingent notice of nonparty fault is an interlocutory order that may not be appealed at this time. As such, we will not address WWC's assignment of error regarding this notice.

### B. Contractual Indemnity Claims Against
### Orders Construction and Pipe Plus

In its third-party complaint, WWC demanded indemnification from Orders and Pipe Plus pursuant to their contracts with Pocahontas PSD, WWC asserts that the business court erred by dismissing its express indemnity claims against both Orders Construction and Pipe Plus.

WWC based its contractual indemnity demands on the following clause, which appears in the relevant contracts:[15]

7.18   Indemnification

A. To the fullest extent permitted by laws and Regulations, and in addition to any other obligations of Contractor under the Contract or otherwise, Contractor shall

---

[15] The contracts between Pocahontas PSD and Orders Construction, and Pocahontas PSD and Pipe Plus, each list the documents that make up the respective contract. Included in that list is "General Conditions (pages 1 to 65 inclusive)." The indemnification clause at issue is part of these standard general conditions.

13

indemnify and hold harmless Owner and Engineer, and the officers, directors, members, partners, employees, agents, consultants and subcontractors of each and any of them from and against all claims, costs, losses, and damages (including but not limited to all fees and charges of engineers, architects, attorneys, and other professionals and all court or arbitration or other dispute resolution costs) arising out of or relating to the performance of the Work, provided that any such claim, cost, loss, or damage is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Work itself), including the loss of use resulting therefrom but only to the extent caused by any negligent act or omission of Contractor, any Subcontractor, any Supplier, or any individual or entity directly or indirectly employed by any of them to perform any of the Work or anyone for whose acts any of them may be liable.

. . . .

C. The indemnification obligations of Contractor under Paragraph 7.18.A shall not extend to the liability of Engineer and Engineer's officers, directors, members, partners, employees, agents, consultants and subcontractors arising out of:

1.      the preparation or approval of, or the failure to prepare or approve maps, Drawings, opinions, reports, surveys, Change Orders, designs, or Specifications; or

2.      giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

WWC argues that the foregoing language encompasses all claims Pocahontas PSD has raised in its counterclaims, and as such, requires Orders and Pipe Plus to indemnify WWC for any damages it may owe Pocahontas PSD.

14

The business court rejected WWC's contractual indemnity claims and provided only a vague and convoluted discussion of the indemnity clause when granting both Orders Construction's motion to dismiss and Pipe Plus's motion for summary judgment. The court first found the claims in this case are related to the exceptions to indemnity set out in paragraph "C" quoted above. Nevertheless, the court then discussed the requirements for the indemnity provision and observed that it is narrow and applies only to certain types of damages and losses caused by Orders Construction or Pipe Plus. Then, turning back to the exceptions, the business court commented that they exclude liability arising from WWC's design work. Finally, the business court identified the various claims asserted against WWC by Pocahontas PSD, which are based on WWC's design of the wastewater treatment facility and its failure to supervise the contractors.[16] Absent from the business court's orders is any discussion or application of the standards for dismissing a complaint or granting summary judgment.

We have explained that "Rule 12(b)(6) permits a party to move to dismiss a pleading for 'failure to state a claim upon which relief can be granted.'" *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 526, 854 S.E.2d 870, 888 (2020). The purpose of a Rule 12(b)(6) motion "is to test the sufficiency of the

---

[16] The only claim involving supervision asserted against WWC by Pocahontas PSD alleges that WWC failed to "supervise contractors so that proper as-built drawings for the force mains could be made."

complaint." *Cantley v. Lincoln Cnty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (per curiam). In so testing a complaint, the trial court should grant dismissal only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim [that] would entitle [it] to relief." Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (citation omitted). In other words, "[t]he task of a court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mountaineer Fire*, 244 W. Va. at 520, 854 S.E.2d at 882 (quoting *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)). In assessing the sufficiency of a complaint, our notice pleading standard requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" W. Va. R. Civ. P. 8(a)(1).

On the other hand, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963). At this stage, the court is "bound to draw any permissible inference from the pleadings, depositions, and the facts, in a light most favorable to the non-moving party," however, "the non-moving party still must produce evidence sufficient for a reasonable jury to find in its favor." *City of Morgantown v. W. Va. Univ. Med. Corp.*, 193 W. Va. 614, 620, 457 S.E.2d 637, 643 (1995). Accordingly,

16

> summary judgment is proper [only] 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' W. Va. R. Civ. P. 56(c).

*Bowden v. Monroe Cnty. Comm'n*, 239 W. Va. 214, 219, 800 S.E.2d 252, 257 (2017).

In connection with its contractual indemnity claim, WWC quoted the pertinent indemnity clause language in its third-party complaint and maintained that "the allegations in [Pocahontas PSD's] Counterclaim clearly allege damages that arise out of the construction and construction management undertaken by Orders Construction and/or its subcontractors, for which it is responsible pursuant to Orders Construction's contract with [Pocahontas PSD]." In addition, WWC alleged that "to the extent WWC has been sued as a result of Orders Construction's defective work and/or inadequate construction management and supervision of the Project, Orders Construction is contractually obligated to . . . indemnify WWC, as the Project Engineer, for [Pocahontas PSD's] claims in this lawsuit." WWC asserted identical claims against Pipe Plus. Viewed in the light most favorable to WWC, it has, in effect, alleged that the damages, if any, suffered by Pocahontas PSD in connection with the construction of the wastewater treatment plant project were caused by Orders Construction and Pipe Plus rather than by any design defect. We find these allegations sufficient to survive a 12(b)(6) motion to dismiss on the issue of contractual indemnity.

17

To the extent that the business court relied on exceptions to the indemnity clause in dismissing Orders Construction, the application of those exceptions is dependent upon resolving whether or not the alleged harm to Pocahontas PSD was caused by WWC's "preparation or approval of, or the failure to prepare or approve maps, Drawings, opinions, reports, surveys, Change Orders, designs, or Specifications," or "giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage." The presence of these factual questions preclude dismissal pursuant to Rule 12(b)(6) as such dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim [that] would entitle [it] to relief." Syl. pt. 3, in part, *Chapman*, 160 W. Va. 530, 236 S.E.2d 207 (citation omitted).

We also reject Orders Construction's claim that, under the modified comparative fault standard set out in West Virginia Code § 55-7-13c (eff. 2015), WWC can only be severally liable for its own acts or omissions and cannot be exposed to claims, losses, or damages caused by Orders. The modified comparative fault standard "does not affect, impair[,] or abrogate any right of indemnity . . . arising out of any contract or agreement . . . ." W. Va. Code § 55-7-13c(f). Thus, we find the circuit court erred by granting Orders Construction's 12(b)(6) motion dismiss as to WWC's contractual indemnity claim.

18

For the same reasons, we find there are material questions of fact with respect to the source of the alleged damages suffered by Pocahontas PSD that preclude summary judgment in favor of Pipe Plus as to WWC's contractual indemnity claim. Pipe Plus has not directed us to any evidence in the record that resolves these liability questions as a matter of law.

Pipe Plus also asserts that WWC's contractual indemnity claim is not ripe; therefore, the business court lacks subject matter jurisdiction. *See* Syl. pt. 3, *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 801 S.E.2d 216 (2017) ("Subject matter jurisdiction does not exist over claims that are not ripe for adjudication."). However, under the circumstances presented in this case, there is an exception to the general ripeness doctrine. This Court has explained that

> [t]he ripeness doctrine "seeks to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Paraquad v. St. Louis Housing Auth.*, 259 F.3d 956, 958 (8th Cir. 2001) (internal quotations and citation omitted). "Questions that may never arise or are purely advisory or hypothetical do not establish a justiciable controversy. Because an unripe claim is not justiciable, the circuit court has no subject matter jurisdiction over it." *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 270 (Ky. Ct. App. 2005) (footnotes omitted)[.]

*Universal Underwriters Ins. Co.* at 345, 801 S.E.2d at 223 (footnote omitted). Nevertheless, "[a] claim for . . . indemnity may be asserted long before the cause of action

actually accrues." 3 *Bruner & O'Connor on Constr. Law*, § 10:6, at 1048 (2022 ed). As

one court explained,

> [t]echnically a claim for indemnity does not arise until the prime obligation to pay has been established . . . . Nevertheless, for the sake of fairness and judicial economy, . . . third-party actions [may] be commenced in certain circumstances *before they are technically ripe*, so that all parties may establish their rights and liabilities in one action.

*Mars Assocs., Inc. v. New York City Educ. Const. Fund*, 126 A.D.2d 178, 191-92 (N.Y.

App. Div. 1987) (emphasis added; quotations and citations omitted). Thus, we now hold

that even though a claim for indemnity does not technically arise until the primary

obligation to pay has been established, such claims may be brought by way of third-party

practice before they are technically ripe to serve the interests of fairness and judicial

economy.[17] For this reason, the fact that WWC's contractual indemnity claims are not

technically ripe did not require disposition of those claims by summary judgment in Pipe

Plus's favor. *See* W. Va. R. Civ. P. 14(a) (allowing a third-party claim against a "person

not a party to the action who is *or may be* liable to the third-party plaintiff for all or part of

---

[17] *See, e.g.*, *Drammeh v. Uber Techs. Inc.*, No. 2:21-CV-202-BJR, 2021 WL 3664008, at *4 n.2 (W.D. Wash. Aug. 18, 2021) ("[A]s a general matter, unripe indemnity claims may be brought against third-party defendants in the same action as the underlying claim against which a third-party plaintiff seeks indemnification, if impleading is in line with [Federal Civil Procedure] Rule 14's goal of judicial efficiency."); *Guzman v. C.R. Epperson Const., Inc.*, 752 N.E.2d 1069, 1075 (Ill. 2001) (acknowledging that "[i]n effect, Illinois law allows the third-party indemnity claim to be filed before it accrues, in order to promote settlement of all claims in one action. The third-party claim cannot be determined, however, before the underlying claim establishing liability and damages is determined." (quotations and citation omitted)).

the plaintiff's claim against the third-party plaintiff" (emphasis added)). Therefore, we conclude that the circuit court erred by granting summary judgment to Pipe Plus as to WWC's contractual indemnity claims.

### C. Contractual Duty to Provide a Defense Claim Against Orders Construction and Pipe Plus.

WWC also demanded that Orders' Construction and Pipe Plus assume its legal defense of Pocahontas PSD's claims and argues that the business court erred by concluding that the indemnification provision does not impose such an obligation. WWC contends that West Virginia law requires Orders and Pipe Plus to provide it with a defense "unless or until sufficient evidence is developed relieving them of this duty." WWC argues that the duty to defend is tested by whether the allegations in the complaint "'are reasonably susceptible of an interpretation that the claim may be covered' by the terms of the contract. *Bruceton Bank v. U.S. Fid. & Guar. Ins. Co.*, 199 W. Va. 548, [553,] 486 S.E.2d 19[, 24] (1997) [(quotations and citation omitted).]" WWC's reliance on *Bruceton Bank*, a case interpreting an insurance policy, is misplaced. With respect to insurance policies, we have explained that

> [a]n insurance company's duty to defend an insured is broader than the duty to indemnify under a liability insurance policy. An insurance company has a duty to defend an action against its insured if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. If, however, the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks

21

> covered by the insurance policy, then the insurance company is relieved of its duties under the policy.

*Bowyer v. Hi-Lad, Inc.*, 216 W. Va. 634, 651, 609 S.E.2d 895, 912 (2004) (per curiam).

While this Court has "recognized that an indemnitor *may* assume control of the indemnitee's defense, at least where no conflict of interest exists," *State ex rel. Vapor Corp. v. Narick*, 173 W. Va. 770, 774, 320 S.E.2d 345, 349 (1984) (emphasis added), WWC cites no case imposing on a purported indemnitor a broad duty to defend like that imposed on insurance companies.

To the contrary, a Michigan appellate court has explained that "[t]he duty to defend is not the same as the duty to indemnify." *Downer v. GDC-Cranbrook Ltd. Dividend Hous. Ass'n, LLC*, No. 359580, 2023 WL 2144553, at *8 (Mich. Ct. App. Feb. 21, 2023) (per curiam). Contrasting the duty to defend as it relates to insurance with a commercial law duty to defend, the *Downer* court clarified that in "commercial transactions not involving insurance law, whether a duty to defend exists is determined by the language of the parties' contract." *Id.* Further,

> the duty to defend and the duty to indemnify are two concepts that are not interdependent and "relate to distinctly different matters." . . . The duty to defend contemplates a duty to deny, contest, or oppose an allegation or claim while the duty to indemnify "contemplates reimbursement for injuries/losses that have already been incurred."

22

*Id.* (quoting *Ajax Paving Indus., Inc. v Vanopdenbosch Constr. Co.*, 797 N.W. 2d 704 (Mich. Ct. App. 2010)).[18]

The relevant language of the indemnity clause requires Orders Construction and Pipe Plus to

> indemnify and hold harmless [WWC] . . . from and against all claims, costs, losses, and damages (including but not limited to all fees and charges of engineers, architects, attorneys, and other professionals and all court or arbitration or other dispute resolution costs) . . . .

Plainly, the obligation described is to indemnify, not to assume WWC's defense. *See Indemnify*, *Black's Law Dictionary* (11th ed. 2019) (defining "indemnify" in relevant part as meaning "1. To *reimburse* (another) for a loss suffered because of a third party's or one's own act or default; . . . 2. To promise to *reimburse* (another) for such a loss." (emphasis added)); *see also Supervalu Operations, Inc. v. Ctr. Design, Inc.*, 206 W. Va. 311, 315, 524 S.E.2d 666, 670 (1999) (per curiam) ("If the contract language is found to be unambiguous then '[i]t is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning.'" (quoting Syl. pt. 3, *Bennett v. Dove*, 166 W. Va. 772, 277 S.E.2d 617 (1981))). Because the indemnification clause at issue does not encompass a duty to defend, the business court did not err by concluding that Orders

---

[18] *See also Marydale Pres. Assocs., LLC v. Leon N. Weiner & Assocs., Inc.*, No. N19C-05-348 AML CCLD, 2022 WL 4446275, at *18 (Del. Super. Ct. Sept. 23, 2022) ("A 'duty to defend' is a contractual obligation that is distinct from a 'duty to indemnify.'").

Construction and Pipe Plus had no obligation to assume WWC's defense in this matter, so Rule 12(b)(6) dismissal and summary judgment were proper as to this claim.

### D. Implied Indemnity Claim
### Against A-3 USA and Pipe Plus

In its third-party complaint, WWC claimed entitlement to common-law indemnity, also referred to as implied indemnity or equitable indemnity,[19] from A-3 USA and Pipe Plus. We first address this issue with respect to A-3 USA, we then consider it as to Pipe Plus.

Because the business court disposed of WWC's implied indemnity claim against A-3 USA by granting A-3 USA's Rule 12(b)(6) motion to dismiss, we must again test the sufficiency of WWC's third-party complaint and affirm the dismissal only if WWC can prove no set of facts to support its claim. *See Cantley v. Lincoln Cnty. Comm'n*, 221

---

[19] *See, e.g.*, *Chacko v. Costco Wholesale Corp.*, 568 F. Supp. 3d 487, 497 (S.D.N.Y. 2021) (commenting that "[c]ommon-law indemnification [is] also referred to as 'implied indemnity'"); *Casper Inn, LLC v. Superior Builders, Inc.*, No. 16-CV-11-R, 2017 WL 5172401, at *4 (D. Wyo. July 17, 2017) (referring to "equitable implied indemnity, also known as implied in law indemnity or common law indemnity" under Wyoming law); *Gen. Motors Corp. v. Maritz, Inc.*, No. 02-CV-2132-PHXPGR, 2009 WL 1259376, at *1 (D. Ariz. May 6, 2009) (observing that "common law indemnity" is "also known as implied indemnity"). *See also Indemnity*, *Black's Law Dictionary* (11th ed. 2019) (defining "implied indemnity" as "[i]ndemnity arising from equitable considerations and based on the parties' relationship, as when a guarantor pays a debt to a creditor that the principal debtor should have paid. — Also termed *equitable indemnity*.").

W. Va. 468, 470, 655 S.E.2d 490, 492 ("The purpose of a motion under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure* is to test the sufficiency of the complaint."); Syl. pt. 3, in part, *Chapman*, 160 W. Va. 530, 236 S.E.2d 207 (establishing that a trial court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim [that] would entitle [it] to relief" (citation omitted)).

We have previously explained that,

> [t]he requisite elements of an implied indemnity claim in West Virginia are a showing that: (1) an injury was sustained by a third party; (2) for which a putative indemnitee has become subject to liability because of a positive duty created by statute or common law, but whose independent actions did not contribute to the injury; and (3) for which a putative indemnitor should bear fault for causing *because of the relationship the indemnitor and indemnitee share*.

Syl. pt. 4, *Harvest Cap. v. W. Va. Dep't of Energy*, 211 W. Va. 34, 560 S.E.2d 509 (2002) (emphasis added). These three elements are joined by the conjunction "and" meaning they all must be present.[20] And we have clarified that "the concept of implied indemnity is based on equitable principles *arising from the special nature of the relationship between the*

---

[20] *See, e.g.*, *Bowden v. Monroe Cnty. Comm'n*, 239 W. Va. 214, 221, 800 S.E.2d 252, 259 (2017) (explaining that when factors are "joined with the conjunctive 'and,' . . . all elements are required"); *Ooten v. Faerber*, 181 W. Va. 592, 597, 383 S.E.2d 774, 779 (1989) (finding "the use of 'and' here clearly makes both conditions necessary").

*parties.*"[21] *Sydenstricker v. Unipunch Prods., Inc.*, 169 W. Va. 440, 445, 288 S.E.2d 511, 515 (1982) (emphasis added).

The business court granted A-3 USA's motion to dismiss, in part, on WWC's failure to proffer a special relationship with A-3 USA upon which to base a claim for implied indemnity. On appeal, WWC seizes on a sentence in Pocahontas PSD's amended counterclaim alleging that WWC "was to act as [Pocahontas PSD's] representative in connection with the construction of the Project." Based on this allegation, WWC argues that "in any supervisory capacity *it may have had*, [it] would not have actually created the defects" alleged by Pocahontas PSD. (Emphasis added). However, WWC's role as a representative for Pocahontas PSD with respect to construction of the wastewater treatment plant does not suggest the type of relationship between A-3 USA and WWC necessary to support an implied indemnity claim. The special relationship that would give rise to implied indemnity is one that imposed a duty on WWC to pay for damages caused by A-3 USA:

> The general principle of implied indemnity arises from equitable considerations. At the heart of the doctrine is the premise that the person seeking to assert implied indemnity— the indemnitee—has been required to pay damages caused by a third party—the indemnitor. In the typical case, the indemnitee is made liable to the injured party *because of some*

---

[21] Further, "[i]mplied indemnity is based upon principles of equity and restitution[,] and one must be without fault to obtain implied indemnity." Syl. pt. 2, *Sydenstricker v. Unipunch Prods., Inc.*, 169 W. Va. 440, 288 S.E.2d 511 (1982).

> *positive duty created by statute or the common law, but the*
> *actual cause of the injury was the act of the indemnitor.*

Syl. pt. 2, *Hill v. Joseph T. Ryerson & Son, Inc.*, 165 W. Va. 22, 268 S.E.2d 296 (1980)

(emphasis added). The *Hill* Court, addressing a product liability claim, also stated generally

that

> [i]t is this relationship [between indemnitee and indemnitor] . . . as well as to the injured party, which must ultimately determine the right to implied indemnity and the defenses available to the indemnitor. . . . [T]he fundamental premise for the cause of action is that the indemnitee has been subjected to a judgment which arose from injuries brought about by the action of the indemnitor.

*Id*. at 27-28, 268 S.E.2d at 301.


While we have repeatedly acknowledged the need for a special relationship

by which a faultless indemnitee is made liable for the acts of the indemnitor because of

some positive duty created by statute or common law, we have not provided guidance as

to the types of relationships that might fall into that category.[22] Other courts, though, have

examined scenarios where a special relationship supporting a claim for implied indemnity

---

[22] We have commented, without analysis, that implied indemnity arises when the indemnitee's liability is vicarious. *See, e.g.*, *Woodrum v. Johnson*, 210 W. Va. 762, 769, 559 S.E.2d 908, 915 (2001) (commenting that "a vicariously liable defendant's right to implied indemnity is not affected by settlement between a plaintiff and other liable parties"); *cf. Martin Oil Co. v. Philadelphia Life Ins. Co.*, 203 W. Va. 266, 274, 507 S.E.2d 367, 375 (1997) (observing that "implied indemnity is a purely legal theory of recovery, not dependent on the existence of facts revealed in discovery").

27

is present. These cases clarify that the requisite relationship is one by which liability is imputed from the indemnitor to the indemnitee:

> "Importantly, the right to indemnification at common law derives from a special relationship between the parties which has obligated one party to pay *because of its vicarious, constructive, derivative or technical liability for the wrongful acts of the other*." *Dominion of Canada v. State Farm Fire and Cas. Co.*, 754 So. 2d 852, 855 (Fla. 2nd DCA 2000).

*CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598-CIV, 2009 WL 2136527, at *1 (S.D. Fla. July 13, 2009) (emphasis added). Another court has explained that

> "[t]he key element of a common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor" (*Dreyfus v. MPCC Corp.*, 124 A.D.3d 830, 830, 3 N.Y.S.3d 365 [2015] [internal quotation marks, brackets and citations omitted]). . . . "[T]he predicate of common-law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee" . . . (*id*. [internal quotation marks and citations omitted]). As the Court of Appeals has held, "[c]ommon-law indemnification is generally available 'in favor of one who is held responsible solely by operation of law because of his [or her] relation to the actual wrongdoer'" (*McCarthy v. Turner Constr., Inc.*, 17 N.Y.3d 369, 375, 929 N.Y.S.2d 556, 953 N.E.2d 794 [2011], *quoting Mas v. Two Bridges Assoc.*, 75 N.Y.2d 680, 690, 555 N.Y.S.2d 669, 554 N.E.2d 1257 [1990]).

*O'Toole as Tr. for Charafeddine v. Marist Coll.*, 170 N.Y.S.3d 264, 268-69 (N.Y. App. Div. 2022).[23] An implied indemnity claim has been found inapplicable where the party

---

[23] *See also Action, Inc. v. McQueeny Grp., Inc.*, 646 S.W.3d 672, 676 (Ark. Ct. App. 2022) ("Arkansas courts have applied the doctrine of implied indemnity only in limited situations where there is no express-indemnity contract, *such as imputed or vicarious liability* or product liability where a supplier seeks indemnity against the product

alleged to be at fault is an independent contractor. *See Nolde v. Hamm Asphalt, Inc.*, 202 F. Supp. 2d 1257, 1269 (D. Kan. 2002) ("[O]ne who employs an independent contractor, as compared to his own agent, is generally not vicariously liable for the negligent acts of the contractor.").

Absent a liability-imputing relationship, the claim that another is responsible for an alleged harm is a defense rather than a basis for implied indemnification. *See Woodrum v. Johnson*, 210 W. Va. 762, 768, 559 S.E.2d 908, 914 (2001) ("[T]he Court has clearly acknowledged the fact that there is a technical difference between joint tortfeasors and those whose liability is derivative or vicarious[.]"). *See, e.g.*, *Houdaille Indus., Inc. v. Edwards*, 374 So. 2d 490, 494 (Fla. 1979) ("[Manufacturer's] claim that [employee's] death resulted solely from the negligence of [employer] states a complete defense to the

---

manufacturer." (emphasis added)); *Jentz v. ConAgra Foods, Inc*., No. 10-CV-0474-MJR-PMF, 2012 WL 1297699, at *3 (S.D. Ill. Apr. 16, 2012) (acknowledging that "a promise to indemnify can be implied from the relationship among tortfeasors. 'The fundamental premise . . . is that the indemnitee, although without fault in fact, has been subjected to liability solely because of the legal relationship with the plaintiff or a nondelegable duty arising out of common or statutory law,'" and identifying the types of relationships that support common-law indemnity as including "lessor/lessee, employer/employee[,] and master/servant" (quoting *Frazer v. A.F. Munsterman*, 527 N.E.2d 1248, 2151-52 (Ill. 1988))); *In re Jordan Foster Constr., LLC*, No. 08-22-00201-CV, 2023 WL 2366610, at *4 (Tex. Ct. App. Mar. 6, 2023) (explaining that Texas recognizes common-law indemnity only "in products liability actions . . . or in negligence actions to protect a defendant whose liability is purely vicarious in nature" (quotations and citation omitted)); 41 Am. Jur. 2d *Indemnity* § 20, at 406-07 (2015) ("One is entitled to implied indemnification where he or she has committed no wrong but is held vicariously liable for the wrongdoing of another.").

original action. It does not establish that [manufacturer] is vicariously, constructively, derivatively, or technically liable for [employer's] negligence.").

In this case, to support its claim for implied indemnity against A-3 USA, WWC had to plead all the essential elements of its claim, including facts supporting a special relationship with A-3 USA that would result in liability for A-3 USA's wrongful acts being imputed on WWC by operation of law. *See Price v. Halstead*, 177 W. Va. 592, 594, 355 S.E.2d 380, 383 (1987) (stating that a plaintiff must, "at a minimum . . . set forth sufficient information to outline the elements of [the] claim" in its complaint, and if it "fails to do so, dismissal is proper"); *Fass v. Nowsco Well Serv., Ltd.*, 177 W. Va. 50, 52, 350 S.E.2d 562, 563 (1986) (per curiam) ("The complaint must set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist.").

WWC, in its third-party complaint, expresses its belief that "A3-USA was retained by Orders Construction and supplied the membrane bioreactor ('MBR') system and related components of that system installed in the WWTP [wastewater treatment plant] and provided direction as to what components of the system, including the screens, pumps[,] and solution tank, should be installed." Then, under the heading "Negligence," WWC alleges:

> 35. [A-3 USA] had a duty to supply a membrane bioreactor ("MBR") system and related components that functioned

> properly and met the requirements of the Contract Documents and complied with applicable industry standards.
>
> 36.    [A-3 USA] had a duty to exercise [a] reasonable degree of care, skill, and knowledge in supplying the MBR system and related components.

Finally, WWC avers that, to the extent Pocahontas PSD proves its allegations and suffered damages in connection with the membrane bioreactor systems and related components supplied by A-3 USA, WWC is entitled to implied indemnification from A-3 USA.

WWC's third-party complaint contains no facts about its relationship with A-3 USA, much less one that gives rise to imputed or vicarious liability. In fact, the only relationship involving A-3 USA mentioned in WWC's third-party complaint is one between A-3 USA and Orders Construction.[24] Furthermore, Pocahontas PSD does not assert any claims against WWC based on imputed or vicarious liability.[25] *See, e.g.,* *Schoolhouse Ltd. Liab. Co. v. Creekside Owners Ass'n*, No. 13-0812, 2014 WL 1847829, at *4 (W. Va. May 8, 2014) (memorandum decision) (affirming dismissal of Schoolhouse's cross-claim for implied indemnity against settling co-defendants and commenting that "the Amended Complaint does not assert any claims against Schoolhouse predicated upon imputed, strict, or vicarious liability of Schoolhouse for the actions or omission of the

---

[24] WWC's third-party complaint merely states that "A3-USA was retained by Orders Construction."

[25] Pocahontas PSD has asserted two claims against WWC, one for breach of the standard of care and professional negligence, and one for breach of contract.

settling defendants"). Accordingly, we conclude that the business court did not err in granting A3-USA's motion to dismiss WWC's third-party claim for implied indemnity because WWC failed to adequately plead the necessary elements of that claim. *See, e.g.*, *Burlington N. v. Cosco N. Am., Inc.*, No. 03-2065-JWL, 2003 WL 21685908, at *4 (D. Kan. 2003) ("Cosco's allegations fail to state an implied contractual indemnification claim. While Cosco pleads that the alleged derailment occurred without 'any fault, negligence, act or omission of [it],' it does not allege that there was a relationship—such as principal and agent—that would cause it to be vicariously liable for Nippon Express's actions." (footnote omitted)).

In contrast to the procedural posture of A-3 USA's dismissal, the business court disposed of WWC's implied indemnity claim against Pipe Plus by granting Pipe Plus's motion for summary judgment.[26] "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry

---

[26] Courts have acknowledged that the presence of a contract provision establishing indemnity thwarts a claim for implied indemnity. *See Holt v. Walsh Grp.*, 316 F. Supp. 3d 274, 281 (D.D.C. 2018) (commenting that "many states have held that where an express, written indemnification provision exists, the agreed upon terms of that provision—and not principles of implied or equitable indemnification—control the duties and respective liability of the contracting parties," and collecting cases). In this case, there is a contractual provision that requires Pipe Plus to indemnify WWC in certain circumstances; however, WWC was not a signatory to that contract, which was between Pocahontas PSD and Pipe Plus. We need not decide whether that provision prevents WWC from asserting an alternate claim for implied indemnity against Pipe Plus because we find WWC's implied indemnity claim is not cognizable on other grounds.

concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co*, 148 W. Va. 160, 133 S.E.2d 770. Further,

> [s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995). We have stated that "[s]ummary judgment . . . is a device designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial, if in essence there is no real dispute as to salient facts or if only a question of law is involved." *Hanks v. Beckley Newspapers Corp.*, 153 W. Va. 834, 836-37, 172 S.E.2d 816, 817 (1970).

In its motion seeking summary judgment, Pipe Plus argued, and the business court subsequently agreed, that WWC had no viable claim for implied indemnity because no special relationship had been alleged. On appeal, WWC asserts the same argument it provided with respect to A-3 USA, that WWC "was to act as [Pocahontas PSD's] representative in connection with the construction of the Project" and that "in any supervisory capacity it may have had, [i]t would not have actually created the defects" alleged by Pocahontas PSD. Missing from WWC's argument is any discussion of evidence showing a special relationship between it and Pipe Plus by which WWC is liable for the wrongful conduct of Pipe Plus. Likewise, WWC has directed us to no record evidence creating a "genuine issue of fact to be tried" as to the existence of such a relationship. Syl.

33

pt. 3, in part, *Aetna Cas. & Sur. Co.*, 148 W. Va. 160, 133 S.E.2d 770. Therefore, the business court did not err in granting summary judgment to Pipe Plus on this issue, because WWC "has failed to make a sufficient showing on an essential element of the case that it has the burden to prove," Syl. pt. 2, in part, *Williams*, 194 W. Va. 52, 459 S.E.2d 329.

### E. Viability of Contribution Claim
### Against A-3 USA

In granting A-3 USA's Rule 12(b)(6) motion to dismiss, the business court observed that the modified comparative fault standard established by the West Virginia Legislature in 2015[27] provides generally for several liability among defendants.[28] The business court acknowledged that there are statutory exceptions to several liability but found none of those exceptions applied here. Thus, the business court concluded that the contribution claim asserted by WWC against A3-USA "cannot be maintained, as the facts

---

[27] *See* W. Va. Code §§ 55-7-13a to -13d.

[28] The Legislature has described several liability as follows:

> (a) In any action for damages, the liability of each defendant for compensatory damages shall be several only and may not be joint. Each defendant shall be liable only for the amount of compensatory damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against each defendant for his or her share of that amount. . . .

W. Va. Code § 55-7-13c(a) (eff. 2015).

and allegations of conduct do not fit any of the exceptions to West Virginia's several liability law."

WWC argues that the business court erred by ruling that West Virginia's modified several liability standard prevents its contribution claim against A-3 USA because the Legislature did not expressly abolish claims of contribution. WWC also relies on a 2019 order of the business court in a separate matter opining that legislative adoption of the modified comparative fault standard did not extinguish the inchoate right to contribution. We are unpersuaded by this authority.

We begin our analysis by reviewing the principles of contribution. This Court explained, prior to the enactment of the modified comparative fault standard, that

> [t]he right of contribution arises from liability for a joint wrong committed by two or more parties against the plaintiff. We explained the doctrine of contribution in Syllabus Point 4, in part, of *Sydenstricker v. Unipunch Prods., Inc.*, 169 W. Va. 440, 288 S.E.2d 511 (1982), as follows:
>
> > "The doctrine of contribution has its roots in equitable principles. The right to contribution arises when persons having a common obligation, either in contract or tort, are sued on that obligation and one party is forced to pay more than his *pro tanto* share of the obligation."

*Bd. of Educ. of McDowell Cnty. v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 602, 390 S.E.2d 796, 801 (1990). The *Zando* Court further described the applicable

35

nomenclature, stating that an "inchoate right to contribution," refers to the right of a defendant in a negligence action to join those who share the fault by asserting claims for contribution. *Id*.[29] The Court clarified that the "fundamental purpose of inchoate contribution," is to allow all those who contributed to an injury to be brought into one suit, which promotes judicial economy, avoids piecemeal litigation, and ensures that damages are shared among those who contributed to them. *Id*. at 603, 390 S.E.2d at 802.

The question we must address is whether, or to what extent, the inchoate right to contribution exists under the modified comparative fault standard established by statute. Resolving this issue requires us to determine the Legislature's intent in adopting the modified comparative fault standard. *See* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."). In engaging in this query, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438

---

[29] The Court distinguished an inchoate right to contribution from "the statutory right of contribution," which arises "after a joint judgment conferred by W. Va. Code, 55-7-13 (1923) [(repealed eff. 2015)]. [*Haynes v. City of Nitro*,] 161 W. Va. [203,] 234, 240 S.E.2d [544,] 547 [(1977)]." *Bd. of Educ. of McDowell Cnty. v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 602, 390 S.E.2d 796, 801 (1990).

(1995). We find no ambiguity in the modified comparative fault provisions relevant to our determination of the present issue; therefore, we apply the statute's plain language.

In adopting modified comparative fault, the Legislature specifically provided that

(a) For purposes of this article, "comparative fault" means the degree to which the fault of a person was a proximate cause of an alleged personal injury or death or damage to property, expressed as a percentage. *Fault shall be determined according to section thirteen-c [§ 55-7-13c] of this article.*

(b) In any action based on tort or any other legal theory seeking damages for personal injury, property damage, or wrongful death, *recovery shall be predicated upon principles of comparative fault and the liability of each person, including plaintiffs, defendants and nonparties who proximately caused the damages, shall be allocated to each applicable person in direct proportion to that person's percentage of fault.*

(c) The total of the percentages of comparative fault allocated by the trier of fact with respect to a particular incident or injury must equal either zero percent or one hundred percent.

W. Va. Code § 55-7-13a (eff. 2015) (emphasis added). As reflected in subparagraph (a) above, West Virginia Code § 55-7-13c(a) details how fault shall be determined among wrongdoers:

(a) In any action for damages, the liability of each defendant for compensatory damages *shall be several only* and may not be joint. Each defendant *shall be liable only for the amount of compensatory damages allocated to that defendant in direct proportion to that defendant's percentage of fault*, and a separate judgment shall be rendered against each defendant

37

for his or her share of that amount. However, joint liability may be imposed on two or more defendants who consciously conspire and deliberately pursue a common plan or design to commit a tortious act or omission. Any person held jointly liable under this section shall have a right of contribution from other defendants that acted in concert.

W. Va. Code § 55-7-13c(a) (emphasis added). This provision uses mandatory language in directing that, in general, liability for compensatory damages "*shall* be several only" and that "[e]ach defendant *shall* be liable only" in proportion to its own percentage of fault. *Id*. (emphasis added). *See also* Syl. pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd*., 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."). This provision also provides an exception to several liability under which contribution shall be available when two or more defendants "consciously conspire and deliberately pursue a common plan or design to commit a tortious act or omission." W. Va. Code § 55-7-13c(a). Another exception, set out in paragraph 13c(e), applies when a party's liability has been reallocated under paragraph 13c(d).[30] A right to contribution may also be provided by contract. *See* W. Va. Code § 55-7-13c(f) ("This section does not affect, impair[,] or abrogate any right of indemnity or contribution arising out of any contract or agreement or any right of indemnity otherwise

---

[30] Under West Virginia Code § 55-7-13c(e), "[a] party whose liability is reallocated under subsection (d) of this section is nonetheless subject to contribution and to any continuing liability to the plaintiff on the judgment." Subsection 13c(d) allows for reallocation within a certain timeframe "if a plaintiff through good faith efforts is unable to collect from a liable defendant . . . ." W. Va. Code § 55-7-13c(d).

provided by law."). Furthermore, the Legislature established a method for allocating fault to nonparties. *See* W. Va. Code § 55-7-13d.

By employing mandatory language in the modified comparative fault standard, specifying that fault shall be allocated among those who proximately caused the damages suffered, providing a method for a factfinder to consider the fault of nonparties, and identifying specific exceptions to several liability with contribution expressly allowed in those circumstances, the Legislature has made clear that, outside of exceptions recognized in this statutory scheme, contribution is no longer available. *Cf. State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W. Va. 227, 250, 744 S.E.2d 625, 648 (2013) ("[T]he Latin doctrine *inclusio unius est exclusio alterius*, *i.e.*, one is the exclusion of the others . . . instructs courts to exclude from operation those items not included in the list of elements that are given effect expressly by statutory language." (quotations and citations omitted)). In fact, we have previously recognized that the modified comparative fault statutes "do purport to fully occupy the field of comparative fault and the consideration of 'the fault of parties and nonparties to a civil action[.]'" *Modular Bldg. Consultants of W. Va., Inc. v. Poerio, Inc.*, 235 W. Va. 474, 486 n.12, 774 S.E.2d 555, 567 n.12 (2015) (quoting H.B. 2002, 2015 Leg. 82nd Sess. (W. Va. 2015)).[31] We believe the Legislature

---

[31] Federal courts applying West Virginia law have also recognized the abolition of contribution claims that are not recognized in our modified comparative fault statutes. *See French v. XPO Logistics Freight, Inc.*, No. 2:18-CV-1544, 2020 WL 1879472, at *3 (S.D. W. Va. Apr. 15, 2020) (agreeing that "[i]n effect, this broad [modified

further expressed its intent that contribution claims be governed by the modified comparative fault statutes when, at the same time it enacted those statutes, it repealed the statutory right of contribution formerly provided in West Virginia Code, 55-7-13 (repealed eff. 2015).

Based on the foregoing discussion, we now hold that the statutory scheme and exceptions set forth in West Virginia Code §§ 55-7-13a to -13d govern contribution claims. The unambiguous language of those statutes abolished any contribution claim that falls outside of them. In this case, WWC's third-party complaint had one section alleging claims against A3-USA, titled "Negligence." In that section, WWC avers that if Pocahontas PSD proves its allegations and causes of action linked to any defects in the membrane bioreactor system and related component parts, then any associated damages were caused by negligence on the part of A3-USA, and "to the extent [Pocahontas PSD] is entitled to any recovery, WWC demands that judgment be entered in its favor and against A3-USA and that A3-USA be adjudged solely liable to [Pocahontas PSD] and/or liable to WWC for

comparative fault] rule amounts to the near total abolition of claims for contribution," observing that "[n]ear total abolition is not the same as total abolition," and discussing statutory exceptions allowing for joint liability and a right of contribution (quotations and citations omitted)); *Bateman v. CMH Homes, Inc*., No. CV-3:19-0449, 2020 WL 597564, at *2 (S.D. W. Va. Feb. 6, 2020) (same); *Clovis v. J.B. Hunt Transp. Inc*., No. 1:18-cv-147, 2019 WL 4580045, at *3 & n.4 (N.D. W. Va. Sept. 20, 2019) (acknowledging "the near total abolition of claims for contribution given the establishment of several liability as the norm," and commenting that "this Court believes these sweeping statutory provisions completely govern the [contribution] issues raised in the pending motion as well as civil actions seeking recovery for the actionable negligence of others").

contribution . . . ." WWC has failed to identify any statutory exception entitling it to contribution from A3-USA or to direct us to any facts in its third-party complaint supporting a contribution claim recognized in the modified comparative fault statutes. Therefore, we find the business court's dismissal of WWC's third-party complaint as to A3-USA was not erroneous on this ground.[32]

---

[32] WWC also assigns error to the business court's determination that the applicable statute of limitations barred certain claims WWC asserted against Orders Construction and Pipe Plus. We need not address this issue. The business court granted Orders Construction's Rule 12(b)(6) motion to dismiss on various grounds, including that WWC failed to plead a legally viable claim for implied indemnity against Orders Construction by failing to proffer a special relationship upon which such a claim can be based. The business court also found that the terms of the contractual indemnification clause discussed above prohibited WWC's contribution claim against Orders, because allowing contribution would nullify the indemnity terms of the contract. WWC failed to appeal either of these rulings, so dismissal on these grounds will stand regardless of any determination by this Court as to the timeliness of WWC's third-party complaint. Therefore, addressing these issues would amount to an improper advisory opinion. "Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes." *Mainella v. Bd. of Trs. of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W. Va. 183, 185, 27 S.E.2d 486, 487-88 (1943). *See also Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 135, 140 n.10, 506 S.E.2d 578, 583 n.10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived.").

For the same reasons applied to Orders Construction, the business court concluded that the indemnity clause in the Pipe Plus contract prohibited WWC's contribution claim against Pipe Plus. WWC has not challenged this ruling. Therefore, the business court's summary judgment ruling on that ground is final. Additionally, we have already determined that the business court did not err in granting summary judgment as to WWC's implied indemnity claim because WWC failed to make a sufficient showing of a special relationship to overcome summary judgment. Thus, we need not address the question of whether the business court was correct as to the alternate ground of the statute of limitations.

## IV.

## CONCLUSION

As explained above, we reverse the order of the Circuit Court of Kanawha County, Business Court Division, dated January 14, 2021, granting Orders Construction's Rule 12(b)(6) motion to dismiss as to WWC's contractual indemnity claim against Orders Construction, and the court's April 12, 2021 order denying WWC's Rule 59(e) motion to alter that judgment. We remand for additional proceedings on that issue consistent with this opinion. Likewise, we reverse the business court's order dated April 16, 2021, granting summary judgment to Pipe Plus as to WWC's contractual indemnity claim, and remand for additional proceedings consistent with this opinion. However, we affirm that order as to WWC's implied indemnity claim against Pipe Plus. Finally, we affirm the business court's order dated March 30, 2021, granting A-3 USA's Rule 12(b)(6) motion to dismiss as to WWC's claims for implied indemnity and contribution, and the May 18, 2021 order denying WWC's Rule 59(e) motion to alter that judgment.

Affirmed in part, Reversed in part, and Remanded.